## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ANGELO A. GONZALEZ**                                        **CIVIL ACTION**

**VERSUS**                                                              **NO. 13-0034**

**LT. RONNIE SEAL, LT. B. SMITH, CSM**            **SECTION "J" (4)**
**BROOK, CSM TYNES, JONATHAN D.**

### PARTIAL REPORT AND RECOMMENDATION

Before the Court is a **Motion to Dismiss Based on Qualified Immunity (Rec. Doc. No. 15)** filed by the defendants, Captain Ronnie Seal, Lieutenant Blandon Vernon Smith, Corrections Sergeant Master ("CSM") Douglas Brooks, and CSM Jonathan Tynes, seeking dismissal of plaintiff's 42 U.S.C. § 1983 claims against these defendants pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted on the basis of qualified immunity.  In addition, the *pro se* plaintiff, Angelo A. Gonzalez ("Gonzalez"), has filed an opposition to the defendants' motion with an incorporated **Motion to Supplement the Complaint (Rec. Doc. No. 16)**, to clarify his claims.  The motions and the entire matter were referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C) and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**.  Upon review of the entire record, the Court has determined that this matter in part can be disposed of without an evidentiary hearing.

I.       **Factual and Procedural Background**

The plaintiff, Angelo A. Gonzalez ("Gonzalez"), is an inmate currently incarcerated in the David Wade Correctional Center in Homer, Louisiana.[1]  He filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, Captain Ronnie Seal, Lieutenant Blandon Vernon Smith, CSM Douglas Brooks, and CSM Jonathan Tynes alleging violations of his constitutional rights while he was housed in the B.B. "Sixty" Rayburn Correctional Center ("RCC").

A.       **The Complaint**

Gonzalez alleges that defendants Smith, Seal, Brooks and Tynes subjected him to physical abuse by beating and kicking him which resulted in bruises on his knees and ankles.  Attached to his complaint are copies of two memoranda captioned from his prior case, Civ. Action No. 09-7707, which was dismissed for failure to exhaust administrative remedies prior to its filing.[2]  Construing the complaint broadly, Gonzalez has indicated his intent to include in the present case the claims raised in his prior case, Civ. Action No. 09-7707"J"(4).[3]  The Court finds that some of his claims from the prior suit already are incorporated in the current complaint and the incorporated attachments thereto.

In the first memorandum,[4] Gonzalez claims that on July 18 or 19, 2006, he was beaten by several officers at RCC including one of the defendants, Lieutenant Smith.  He claims that his problems were instigated by Lieutenant Smith after he received a telephone call from Gary Langley at the Winn Correctional Center.  These issues, he claims, were addressed in one of his prior suits,

---

[1]Rec. Doc. No. 2.

[2]Civ. Action No. 09-7707"J"(4), Rec. Doc. Nos. 114, 115, 117.

[3]*See* Rec. Doc. No. 1, p. 12; Rec. Doc. No. 8, pp. 1, 4; Rec. Doc. No. 16.

[4]Rec. Doc. No. 1, p. 7 *et seq.*

Civ. Action No. 06-11215.  The Court takes notice that the suit was dismissed <u>with</u> prejudice for failure to exhaust administrative remedies.[5]

Gonzalez further claims that, in 2007, Lieutenant John Tullos (who is not a defendant in this case) punched him in the chest.  He further claims that he was hospitalized twice in 2007 and 2008 for internal bleeding, a broken rib, and ulcers after being kicked in the ribs by unidentified RCC officers.

Gonzalez also claims that he was beaten again in November 2009, while shackled and naked on the floor.  He claims this history of beatings has made him paranoid and schizophrenic.  He also lists other inmates, who are not parties to this suit, who he claims were also beaten when defenseless by guards at RCC.[6]

In the second memorandum, Gonzalez indicates his desire to reassert in this new case that same claims he raised in Civ. Action No. 09-7707"J"(4).  He also repeats his claim that the physical abuse he received resulted in him being hospitalized for internal bleeding in 2007 and 2008.  He alleges that he remained on extended lock-down for three years, between 2006 and 2009, during which he endured, witnessed or feared physical abuse by the officers.  He also claims that Captain Seal caused him to be shackled and handcuffed everyday during that period and destroyed his legal papers.  He further claims that during that time period, his cell was searched, he was stripped naked,

---

[5]Civ. Action No. 06-11215"C"(2), Rec. Doc. Nos. 76, 77, 85, 87.

[6]Gonzalez also attached a copy of an affidavit dated June 4, 2010, in which he declares that on March 4, 2010, he saw Officer David Alford and Captain Seal use excessive force against inmate Jason Kron.  Gonzales describes what he saw and heard, including the physical injuries, such as bruising and swelling to Kron's arms.

and he endured anal searches by Captain Seal, all to humiliate him.[7]   As relief, Gonzalez seeks

compensatory damages for his injuries, pain and suffering.

In the 2009 complaint, as amended, and as referenced herein, Gonzalez claimed that,

beginning on July 18, 2006, he was subjected to harassment, abuse, and violence at RCC.   He

claimed that excessive force was used against him on November 11, 2009, purportedly in retaliation

for having filed the prior lawsuit in 2006 addressing other abuse by the prison guards.   Specifically,

Gonzalez contended that, on November 11, 2009, Captain Seal struck him in the head, knocked him

out, and kicked his body.   CSM Leary and Lieutenant Peters were present at the beating and did

nothing to stop it.   This resulted in injuries to his leg, knee, and rib cage and otherwise caused him

to suffer blood loss.   In addition to these physical injuries, Gonzalez claimed   that he suffered

emotional distress and humiliation.   He indicated that EMT Forbes ignored his pain and suffering.

He further alleged that Warden Tanner was placed on notice of the abusive conduct through the

many complaints and grievances filed, but he failed to take disciplinary action against Lieutenant

Smith, who repeatedly used excessive force against Gonzalez.   He also alleged that Assistant

Warden Miller, Mike Harrell, Secretary LeBlanc and Chief Travis denied him due process during

the investigation of his complaints.   He further claims that Assistant Warden Branch and Deputy

Warden Bickham were present at or knew about the beatings and did nothing to stop them.

### B.     Defendants' Motion to Dismiss

The defendants filed a motion (Rec. Doc. No. 15) seeking dismissal of Gonzalez's excessive

force and access to court claims against them for failure to state a claim for which relief can be

---

[7]Gonzalez submitted a pleading which was filed by the clerk of this Court as a supplement to his complaint. Rec. Doc. No. 8.  In that pleading, Gonzalez simply repeats his claims that he was beaten by the defendants and other officers at RCC between 2006 and 2009.  He also attaches administrative records including prison disciplinary and investigative reports and other records related to his efforts to exhaust administrative remedies in and before 2010.

granted pursuant to Fed. R. Civ. P. 12(b)(6).  The defendants argue that they are entitled to qualified immunity because Gonzalez has failed to plead facts sufficient to state a basis for the defendants' liability, how any defendant violated a constitutional right, or why any defendants' conduct was objectively unreasonable in light of clearly established law.

### C.    Gonzalez's Opposition and Motion to Supplement (Rec. Doc. No. 16)

In opposition to the defendants' motion, Gonzalez alleges that they are not entitled to qualified immunity where there was no "prison disturbance" or riot to justify the force.  He asserts that he was the only inmate, at the time 59 years old, and was wearing shackles and handcuffs.  He reiterates that he continues to suffer with pain and blood clots in his left leg.  He further claims that the prison administration enjoys harming the inmates and awarded Captain Seal for his actions.

In addition, Gonzalez seeks to supplement his claims to clarify the underlying basis for his excessive force claims to clarify his intent to include the claims pursued and other defendants named in the prior 2009 case.  He has referenced his supplemental claims and arguments in the opposition/motion to supplement (Rec. Doc. No. 16) and the attachments thereto.

Rule 15(a) of the Federal Rules of Civil Procedure governs the amendment of pleadings. It provides that leave to amend pleadings "shall be freely given when justice so requires."  This and other federal rules "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."  *Conley v Gibson*, 355 U.S. 41, 48 (1957).  Rule 15(a) evinces a liberal amendment policy and a motion to amend should not be denied absent a substantial reason to do so.  *See Jacobsen v Osborne*, 133 F.3d 315, 318 (5th Cir. 1998).  However, leave to amend is by no means automatic.  *Addington v Farmer's Elevator Mut. Ins. Co.,* 650 F.2d 663, 666

(5th Cir. 1981).  The decision to grant or deny a motion for leave to amend lies within the sound discretion of the trial court.  *Id.*

In exercising its discretion, the trial court may consider such factors as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment."  *Gregory v Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981).  Leave to amend should be denied when doing so is required for fairness to the party opposing the motion for leave to amend.  *Zenith Radio Corp. v. Hazeltime Research, Inc.*, 401 U.S. 321 (1971).

In the instant case, the supplement from Gonzalez should come as no surprise to the named defendants since the same claims and assertions are apparent from his original complaint and the incorporated attachments thereto.  The defendants' narrow reading of his *pro se* complaint fails to take into consideration the true nature of Gonzalez's claims and factual assertions.  Nevertheless, the Court finds that Gonzalez's supplement is offered in good faith to reiterate the basis for his claims and should be allowed.

In addition, the United States Fifth Circuit Court of Appeals has held that, in a case filed by a *pro se* plaintiff, the District Court is "required to look beyond the [plaintiff's] formal complaint and to consider as amendments to the complaint those materials subsequently filed."  *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983).  Therefore, a *pro se* litigant's supplemental filings that "embellish[] the original complaint's averments" should be considered in connection with the defendants' motion. *See  Id.*

6

Therefore, affording Gonzalez's *pro se* pleadings a broad construction, the Court will allow him to supplement his current complaint with the additional defendants and claims that he references from his 2009 case, as summarized below.  Thus, the Court shall consider the following claims and defendants also to be included in the instant suit.

As stated above, Gonzalez initially filed his § 1983 complaint against the defendants, Captain Seal, Lieutenant Smith, CSM Brooks, and CSM Tynes.  He is supplementing his petition to also include as defendants the following individuals:[8] Lieutenant Darrell Peters, CSM Larry Weary, EMT Bruce Forbes, Captain Mike Harrell, Warden Robert C. Tanner, Assistant Warden Jerry P. Miller, Assistant Warden Ronald Branch, Deputy Warden Keith Bickham, Chief Jeffery Travis, and Louisiana Department of Corrections Secretary James M. LeBlanc.

He supplements his complaint to include allegations that the abuse against him began on July 18 or 19, 2006, which was the subject of another lawsuit in 2006 against Lieutenant Smith and Lieutenant John Tullos.  Thereafter, in November 2009, Captain Seal with CSM Brooks and Tynes, without any reason, threw him against the wall, hit him, and kicked him.  He claims he was forced to his knees and kicked in the stomach.  This, he claims, caused loose bowels and lacerations to his face, and bruises and abrasions to his left leg, torso, face, and head.  He was also later diagnosed with a hernia in his stomach.

He argues that the facts he has alleged are sufficient to raise the issue of excessive force under the Eighth Amendment.  In identifying the exhibits to his opposition/motion, Gonzalez again reiterates his intent to refile his claims from Civ. Action No. 09-7707"J"(4), which the Court has already outlined in the statement of facts, *supra*.

---

[8]Rec. Doc. No. 16, p. 3; *see also*, Civ. Action No. 09-7707"J"(4), Rec. Doc. Nos. 42, 44, 64, 65.

7

II.     **Standards of Review**

A.      **Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court must accept all well-pleaded facts as true, viewing the complaint in the light most favorable to the plaintiff.  *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

The Supreme Court, however, has declared that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (internal citation omitted).  Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and "[t]he plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *Guidry*, 512 F.3d at 180 (quotation marks omitted).  The United States Supreme Court also has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted).

In determining whether a complaint states a claim that is plausible on its face, the court "draw[s] on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  Thus, as mentioned above, to avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). In order for a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise "more than a sheer possibility" that the defendant has violated the law as alleged. *See Id.* Furthermore, the factual allegations must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

The United States Fifth Circuit Court of Appeals has held that, when reviewing *pro se* complaints, the court must employ less stringent standards. *Bohannan v. Doe*, __ F. App'x __, 2013 WL 2631197, at *4 (5th Cir. Jun. 12, 2013) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). In the prisoner context, the Court previously explained:

> It is the responsibility of the courts to be sensitive to possible abuses [in the prison systems] in order to ensure that prisoner complaints, particularly pro se complaints, are not dismissed prematurely, however unlikely the set of facts postulated. An opportunity should be provided the prisoner to develop his case at least to the point where any merit it contains is brought to light.

*Taylor v. Gibson*, 529 F.2d 709, 713-14 (5th Cir. 1976); *see also*, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

## B.   Qualified Immunity

Qualified immunity shields government officials from individual liability for performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Colston v. Barnhart*, 130 F.3d 96, 98 (5th Cir. 1997); *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 532-33 (5th Cir. 1997) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). To assess a defendants' qualified immunity

defense, the Court utilizes a two-step process. *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011); *Jacobs v. West Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000); *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998) (on appeal after remand); *Colston*, 130 F.3d at 99. Courts have discretion to decide which prong of the qualified-immunity analysis to address first. *Morgan*, 659 F.3d at 371 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

The first step is to determine whether the plaintiff has alleged a violation of a clearly established constitutional right under currently applicable constitutional standards. *Jacobs*, 228 F.3d at 393; *Hare*, 135 F.3d at 325; *Coleman*, 113 F.3d at 533. In determining whether a right is clearly established, this court looks to precedent from the Fifth Circuit and the Supreme Court. *McClendon v. City of Columbia,* 305 F.3d 314, 322 (5th Cir. 2002). Therefore, a right is considered to be clearly established if, based on pre-existing law, the unlawfulness of the conduct in question is apparent. *Id*. In other words, the right is clearly established if its "'contours . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id*. (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (other citations omitted); *accord Foster v. City of Lake Jackson*, 28 F.3d 425, 29 (5th Cir. 1994).

When the plaintiff alleges a constitutional violation so as to satisfy the first prong, the second step requires the Court to determine whether defendant's conduct was objectively reasonable under existing clearly established law. *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001); *Jacobs*, 228 F.3d at 393; *Foster*, 28 F.3d at 428-29. Officials who act reasonably but mistakenly are still entitled to the defense. *Ashcroft v. al-Kidd*, __ U.S. ___, 131 S. Ct. 2074, 2085 (2011). "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *al-Kidd*, 131 S. Ct. at 2085 (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986)); *see also*,

*Creighton*, 483 U.S. at 641.  The court can determine as a matter of law whether a defendant is entitled to qualified immunity and, specifically, whether a defendant's conduct was objectively reasonable.  *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000); *White v. Balderama*, 153 F.3d 237, 241 (5th Cir. 1998); *Colston*, 130 F.3d at 99.

In response to a qualified immunity defense, "plaintiffs suing governmental officials in their individual capacities must allege specific conduct giving rise to the constitutional violation." *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir.1999); *see also* Fed. R. Civ. P. 7(a).  The heightened pleading standard applicable in cases defended on qualified immunity grounds requires a plaintiff to plead "with factual detail and particularity, not mere conclusory allegations." *Id.*; *see also Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995).  In the § 1983 context, this standard translates in part into the requirement that the plaintiff "identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Anderson*, 184 F.3d at 443; *DeLeon v. City of Dallas*, 141 F. App'x 258, 261 (5th Cir. 2005).

## III.   Analysis

The defendants have based their motion to dismiss on the defense of qualified immunity. The Court first notes that the defendants motion does not recognize or fully provide a broad reading to many of Gonzalez's factual assertions in his complaint and incorporated documents.  The Court will nevertheless consider the two-prong analysis to determine whether Gonzalez can overcome the defense by alleging a violation of a clearly established constitutional right under currently applicable constitutional standards and whether the defendants' conduct was objectively reasonable under existing clearly established law.

To be clear, the defendants' motion to dismiss addresses the Eighth Amendment claims of excessive force urged against the original named defendants, Seal, Smith, Brooks, and Tynes. The motion is addressed as to the those defendants. The Court, however, will also point out the basis for Gonzalez's intertwined claim of retaliation against Seal and Smith. In addition, although the Court is not convinced such a claim has been raised, the motion also addresses a First Amendment access to courts claim against Seal. Furthermore, because this is a motion to dismiss, the Court must determine whether Gonzalez has stated "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The motion is not asserted as to any other claim or defendant.

### A.   Violation of a Clearly Established Constitutional Right

### 1.   Excessive Force Against Seal, Smith, Brooks, and Tynes

Gonzalez has presented allegations against the defendants Seal, Brooks, and Tynes for the use of excessive force and retaliation for his having filed a civil suit. Although he lists Smith as a responsible defendant, he has not asserted any facts to show that Smith was directly involved in the use of excessive force in November of 2009. Instead, he references actions by Smith preceding the 2009 incident and otherwise non-specific allegations of his tangent involvement in other beatings. To that extent, any such claim against Smith can be dismissed. Gonzalez, however, has alleged the following facts against Seal, Brooks, and Tynes which must be accepted as true.

Gonzalez remained on extended lock-down from 2006 through 2009, where he was repeatedly beaten by officers, including Lieutenant Smith. He alleges that Captain Seal caused him to be shackled and handcuffed in his cell every day while he was on extended lock-down.

In further retaliation, Captain Seal had Gonzalez's cell searched in November of 2009, during which his legal papers were destroyed.[9]  In addition, Captain Seal had Gonzalez stripped naked and conducted an anal cavity search by inserting his finger into Gonzalez's anus for the sole purpose of humiliating Gonzalez.  In addition, Seal, CSM Brooks and CSM Tynes, threw Gonzalez against the wall for no reason, struck him in the head, and kicked his body.  He was forced to his knees and kicked in the stomach.  At the time of the beating, Gonzalez was 59 years old, naked and wearing handcuffs and shackles.

As a result of the beating, Gonzalez endured injuries to his leg, knee, torso, rib cage, face and head.  He claims to have suffered blood loss, a hernia in his stomach, loose bowels, lacerations, bruises and abrasions, in addition to emotional distress and humiliation.  In addition, he alleges that the beating and other punishment were imposed in retaliation for having filed his 2006 civil rights action for use of excessive force by other officers.

The "core judicial inquiry" into a plaintiff's claim of excessive force under the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).  The courts are to consider five nonexclusive factors to assist in making this determination: "1. the extent of the injury suffered; 2. the need for the application of force; 3. the relationship between this need and the amount of force used; 4. the threat reasonably perceived by the responsible officials; and 5. any efforts made to temper the severity of a forceful response." *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998) (citing *Hudson*, 962 F.2d at 523); *Martin v. Seal*, 510 F. App'x 309, 312 (5th Cir. 2013).  The Court is to look only to the objective

---

[9]In the 2009 pleadings, Gonzalez specified this date as November 11, 2009.

13

reasonableness of the use of force, "without regard to underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989); *see also Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993) (this standard is the same under both the Fourth and Eighth Amendments).

Thus, in the instant complaint, Gonzalez has alleged facts showing allegations under each of the *Hudson* factors. He alleges that he suffered numerous external and internal physical injuries after being beaten and kicked by Captain Seal, CSM Brooks, and CSM Tynes. He claims that these injuries have caused sustained symptoms for which he sought and may still receive medical care. "[T]he extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation." *Hudson*, 503 U.S. at 7 (citation and internal quotation marks omitted); *see also*, *Wilkins*, 559 U.S. at 39 ("The extent of the injury may also provide some indication of the amount of force applied.").

Gonzalez also alleges that there was no need for any use of force, emphasizing his age, physical restraints, and the lack of any need to restore order in the prison. In keeping with that, he also alleges that there was no basis for the officers to have perceived a threat to themselves or to prison security such to have warranted the beating of an inmate who was naked, handcuffed and shackled. This plays to the reasonableness and extent of the force used. *See Baldwin*, 137 F.3d at 840 (the prison officials must be reasonable in determining whether a threat exists); *Clemmons v. Greggs*, 509 F.2d 1338, 1340 (5th Cir. 1975). Finally, the facts alleged by Gonzalez do not reflect any effort on the part of the officers to have tempered the force, especially in light of his allegations that other multiple officers assisted in the beatings and other officers stood by without intervening.

The Court is of the opinion that Gonzalez has alleged more than naked assertions and has instead stated a plausible claim of excessive force against Captain Seal, CSM Brooks, and CSM

14

Tynes under each of the *Hudson* factors.  The first prong of the qualified immunity defense fails.  As noted above, however, he has not stated a claim of excessive force with respect to Lieutenant Smith and any excessive force claims against him should be dismissed.

## 2.      Retaliation Claims Against Smith and Seal

Gonzalez claims that Lieutenant Smith instigated the continued abuse against him in retaliation for the suit he filed in 2006.  He also urges that Captain Seal's use of force on November 11 , 2009, was in retaliation for this prior complaints of excessive force.

To state a valid claim for retaliation under § 1983, a prisoner must allege that he exercised a specific constitutional right, that the defendant had the intent to retaliate against the prisoner for his exercise of that right, that the defendant took a retaliatory adverse action, and the action caused him injury.  *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008).  To prove retaliation, "[t]he inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred."  *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (internal quotation and citation omitted).  "Causation requires a showing that but for the retaliatory motive the complained of incident . . . would not have occurred."  *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998) (internal quotation and citation omitted).  Proving a retaliation claim requires the production of "direct evidence of motivation or, the more probable scenario, . . . 'a chronology of events from which retaliation may plausibly be inferred.'"  *Woods*, 60 F.3d at 1166; (quoting *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988)).  As with any constitutional violation, mere conclusory allegations are insufficient to state a claim.  *Woods*, at 1166.

In this case, Gonzalez has alleged that Lieutenant Smith instigated much of the abuse against him since 2006.  He also claims that Captain Seal's attack upon him in November 2009 was done

in response to the filing of the excessive force case in 2006.  Other than these general allegations,

Gonzalez has not met the "significant burden" of alleging a chronology of events or other motivating

factors to assert a retaliatory action by Smith and Seal.  *Woods*, 60 F.3d at 1166 (to state a claim for

retaliation is a "significant burden.")  As the Fifth Circuit has cautioned, "a two-point chronology"

with "one incident preceding the other" is not support for a plaintiff's retaliation claim and "does

not emit a plausible inference of retaliation."  *McClure v. Turner*, 481 F. App'x 167, 172 (5th Cir.

2012).  Gonzalez's conclusory allegations leaves no causal connection for the Court to infer between

the filing of his lawsuit in 2006 and the abuse he claims to have suffered in 2009.  The defendants'

motion on this issue has merit and the claims should be dismissed.

### 3.   First Amendment Access to the Court Against Seal

As noted previously, the defendants read Gonzalez's complaint to raise a claim that Captain

Seal denied him access to the courts where he claimed in brief that Seal caused his legal papers to

be destroyed in a search of his cell.  Although the Court is not convinced that Gonzalez's intended

to raise a direct claim related to the destruction of legal papers, to the extent his complaint can be

so read, the defendants are correct.

First, a deprivation of personal property, including legal documents, does not provide the

basis for a federal claim where state tort law provides a remedy.  The Supreme Court has ruled that

a state actor's unauthorized deprivation of a prisoner's property, whether negligent or intentional,

does not result in a violation of due process rights if the State provides an adequate post-deprivation

remedy.  *Alexander v. Ieyoub*, 62 F.3d 709, 712 (5th Cir. 1995) (citing *Hudson v. Palmer*, 468 U.S.

517 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part on other grounds by Daniels

v. Williams*, 474 U.S. 327 (1986)); *accord Wilson v. Holt*, 158 F. App'x 546, 546 (5th Cir. 2005).

Similar to Gonzalez's allegations here, in *Hudson*, a state prisoner filed suit under § 1983 alleging that, during a search of his prison cell, a guard deliberately and maliciously destroyed some of his property, including legal papers. *Hudson*, 468 U.S. at 519-20. The Supreme Court found no violation of his Fourth or Fourteenth Amendment rights actionable under § 1983 because state law provided the prisoner with an adequate post-deprivation remedy. *Id*. at 536. The Fifth Circuit has clearly recognized that Louisiana law provides an adequate remedy for both intentional and negligent deprivations of property. *Hutchinson v. Prudhomme*, 79 Fed. App'x 54, 55 (5th Cir. 2003); *Copsey v. Swearingen*, 36 F.3d 1336, 1342-43 (5th Cir. 1994); *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984).

Considering such a claim under the First Amendment, Gonzalez's fairs no better. "[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government." *Borough of Duryea, Pa. v. Guarnieri*, __ U.S. __, 131 S. Ct. 2488, 2494 (2011) (citations omitted). Prisoners maintain the constitutional right of access to the courts that must be "adequate, effective, and meaningful." *Bounds v. Smith*, 430 U.S. 817, 822 (1977). "While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993) (footnote omitted). The Court has established that this right prohibits state prison officials from actively interfering with inmates' attempts to prepare or file legal documents. *Lewis v. Casey*, 518 U.S. 343, 350 (1996).

In this case, Gonzalez has not alleged or even implied that the defendants denied him access to a law library, legal assistance, or in any way impeded his efforts to file non-frivolous legal

documents in any court.  Without such an allegation, he has failed to state a claim for which relief can be granted.  *See Manning v. Sumlin*, __ F. App'x __, 2013 WL 5569098, at *1 (5th Cir. Oct. 10, 2013).  The defendants' motion has merit on this issue, and this claim should be dismissed.

**B.     Objectively Reasonable Conduct under Clearly Established Law**

The Court will consider the second part of the qualified immunity analysis with regard to Gonzalez's excessive force claims against the movants, Seal, Brooks, and Tynes.  The defendants did not wholly address this facet of the qualified immunity inquiry relying instead on the argument that Gonzalez would not survive the first prong of the qualified immunity inquiry.  The Court has already found that Gonzalez's allegations in his pleadings are sufficient to at least state a claim of excessive force.  The remaining question is whether the defendants actions were unreasonable in light of prevailing law.

The Supreme Court has provided guidance for the courts in determining when a defendant faces clearly established law:

> For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, *see Mitchell [v. Forsyth*, 472 U.S. 511,] 535, n. 12, 105 S.Ct. 2806, 86 L. Ed. 2d 411; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *see also, Saucier v. Katz*, 533 U.S. 194, 206 (2001).

The central concept is that of "fair warning" in that, "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights."  *Hope*, 536 U.S. at 740 (internal quotation marks omitted).

As discussed above, Gonzalez alleges that there was no need for any use of force in light of his age and the fact that there was no disruption or riot at the time.  He also alleges that there was no basis for the officers to have perceived a threat because Gonzalez was naked, handcuffed and shackled.  It would be unfathamable to believe that any prison officer would understand it to be lawful to search anally, beat, kick, and grievously injure an inmate without reason while that inmate was wearing shackles and handcuffs.  Under the facts presented by Gonzalez, and at this stage of the proceedings, there are sufficient allegations to negate the suggestion that the use of force was made in a "good faith effort to maintain or restore discipline" and that the use of force was not "nontrivial" but instead was disproportionate to any possible provocation.  *See Hudson*, 503 U.S. at 6-7; *Mitchell v. Cervantes*, 453 F. App'x 475, 478 (5th Cir. 2011).

For the foregoing reasons, the defendants' motion should be denied to the extent they move for dismissal based on qualified immunity from Gonzalez's excessive force claims against Captain Seal, CSM Brook, and CSM Tynes.

## IV.   **Order and Recommendation**

It is therefore **ORDERED** that Gonzalez's **Motion to Supplement (Rec. Doc. No. 16)** is **GRANTED** to allow him to include the additional claims of excessive force, denial of adequate medical care, failure to protect, and denial of due process, as outlined in this report, and to include as additional defendants: Lieutenant Darrell Peters, CSM Larry Weary, EMT Bruce Forbes, Captain Mike Harrell, Warden Robert C. Tanner, Assistant Warden Jerry P. Miller, Assistant Warden Ronald Branch, Deputy Warden Keith Bickham, Chief Jeffery Travis, and Louisiana Department of Corrections Secretary James M. LeBlanc.

19

It is further **ORDERED** that the Clerk of Court shall file and docket a copy of Record Document Number 16 into the record as a Supplemental Complaint and, pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(2), to cause service of the Supplemental Complaint upon the original defendants, Seal, Smith, Brooks and Tynes, and to cause service of the Original (Rec. Doc. No. 1) and Supplemental Complaints upon the newly added defendants.

It is **RECOMMENDED** that the defendants' **Motion to Dismiss Based on Qualified Immunity (Rec. Doc. No. 15)** be **GRANTED in part** to dismiss the plaintiff's § 1983 claims of excessive force against Lieutenant Smith, of retaliation against Captain Seal and Lieutenant Smith, and denial of access to the courts claims against Captain Seal, for failure to state a claim for which relief can be granted; and **DENIED in part** to the extent it seeks dismissal of the plaintiff's § 1983 claims of excessive force against Captain Seal, CSM Brooks, and CSM Tynes.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[10]

New Orleans, Louisiana, this 13th day of November, 2013.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[10]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.