# UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ANGELO A. GONZALEZ          CIVIL ACTION

VERSUS          NO.  13-0034

LT. RONNIE SEAL, LT. B. SMITH, CSM          SECTION "J" (4)
BROOK, CSM TYNES, JONATHAN D.

## REPORT AND RECOMMENDATION

Before the Court are two motions to dismiss. The first is a **Motion to Dismiss Defendants Bruce Forbes, Robert Tanner, Mike Harrell, Jeffrey Travis, James Leblanc, and Keith Bickham Based on Qualified Immunity (Rec. Doc. No. 23)** filed by the defendants, EMT Bruce Forbes, RCC Warden Robert Tanner, Major Michael Harrell, DPSC Operations Chief Jeffrey Travis, DPSC Secretary James LeBlanc, and RCC Deputy Warden Keith Bickham,[1] seeking dismissal of plaintiff's 42 U.S.C. § 1983 claims against these defendants pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted on the basis of qualified immunity.  The *pro se* plaintiff, Angelo A. Gonzalez ("Gonzalez"), has filed an opposition to the defendants' motion. *See* Rec. Doc. No. 28.

The second motion, is a **Motion to Dismiss Parties Based on Prescription (R. Doc. 24)** filed by the Defendants Captain Ronnie Seal, Corrections Sergeant Master Douglas Brooks (incorrectly sued as "CSM Brook") and Corrections Sergeant Master Jonathan Tynes (incorrectly sued as "CSM

---

[1]Defendants contend that J.P. Miller, and Rob Branch have both retired from DPSC, have not been served, and are not appearing herein. However, Defendants also suggest despite the non-appearance, that the qualified immunity defense raised by the moving defendants applies equally to Branch and Miller and, pursuant to 28 U.S.C. §1915 and/or 42 U.S.C. §1997e, they may be dismissed without requiring service or an appearance. *Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009) (quoting *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990)). *See* Rec. Doc. No. 23, p. 1.

Tynes A. Jonathan") and CSM Larry Weary.[2] The *pro se* plaintiff, Angelo A. Gonzalez ("Gonzalez"), has filed three oppositions to the defendants' motion.  *See* Rec. Doc. Nos. 27, 30, and 53.

The motions and the entire matter were referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C) and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**.  Upon review of the entire record, the Court has determined that this matter in part can be disposed of without an evidentiary hearing.

## I.      Factual and Procedural Background

The plaintiff, Angelo A. Gonzalez ("Gonzalez"), is an inmate currently incarcerated in the David Wade Correctional Center in Homer, Louisiana.[3]  He filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, Captain Ronnie Seal, Lieutenant Blandon Vernon Smith, CSM Douglas Brooks, and CSM Jonathan Tynes alleging violations of his constitutional rights while he was housed in the B.B. "Sixty" Rayburn Correctional Center ("RCC").

### A.      The Complaint

Gonzalez alleges that defendants Smith, Seal, Brooks and Tynes subjected him to physical abuse by beating and kicking him which resulted in bruises on his knees and ankles.  Attached to his complaint are copies of two memoranda captioned from his prior case, Civ. Action No. 09-7707,

---

[2]In Defendants' Motion to Dismiss (Rec. Doc. No. 24) they contend that Lieutenant Blandon Vernon Smith is not joining in the filing of said motion as all claims against him have been dismissed by the undersigned's previous Report and Recommendation. *See e.g.,* R. Doc. 24, p. 1, R. Doc. 21 & R. Doc. 17. The Court agrees, as Gonzalez's claim of retaliation and excessive force were dismissed by the Presiding District Judge's adopting of this report and recommendation. *See e.g.,* Rec. Doc. No. 21. As such the Court finds that although mentioned as a defendant in Gonzalez's supplemental amended complaint (Rec. Doc. Nos. 18 and 22) Lieutenant Blandon Vernon Smith is no longer a defendant in this case, and shall not be addressed in this report and recommendation.

[3]Rec. Doc. No. 2.

which was dismissed for failure to exhaust administrative remedies prior to its filing.[4] Construing the complaint broadly, Gonzalez has indicated his intent to include in the present case the claims raised in his prior case, Civ. Action No. 09-7707"J"(4).[5] The Court finds that some of his claims from the prior suit already are incorporated in the current complaint and the incorporated attachments thereto.

In the first memorandum,[6] Gonzalez claims that on July 18 or 19, 2006, he was beaten by several officers at RCC including one of the defendants, Lieutenant Smith.  He claims that his problems were instigated by Lieutenant Smith after he received a telephone call from Gary Langley at the Winn Correctional Center.  These issues, he claims, were addressed in one of his prior suits, Civ. Action No. 06-11215. The Court takes notice that the suit was dismissed <u>with</u> prejudice for failure to exhaust administrative remedies.[7]

Gonzalez further claims that, in 2007, Lieutenant John Tullos (who is not a defendant in this case) punched him in the chest.  He further claims that he was hospitalized twice in 2007 and 2008 for internal bleeding, a broken rib, and ulcers after being kicked in the ribs by unidentified RCC officers.

Gonzalez also claims that he was beaten again in November 2009, while shackled and naked on the floor.  He claims this history of beatings has made him paranoid and schizophrenic.  He also lists other inmates, who are not parties to this suit, who he claims were also beaten when defenseless

---

[4]Civ. Action No. 09-7707"J"(4), Rec. Doc. Nos. 114, 115, 117.

[5]*See* Rec. Doc. No. 1, p. 12; Rec. Doc. No. 8, pp. 1, 4; Rec. Doc. No. 16.

[6]Rec. Doc. No. 1, p. 7 *et seq*.

[7]Civ. Action No. 06-11215"C"(2), Rec. Doc. Nos. 76, 77, 85, 87.

by guards at RCC.[8]

In the second memorandum, Gonzalez indicates his desire to reassert in this new case the same claims he raised in Civ. Action No. 09-7707"J"(4). He also repeats his claim that the physical abuse he received resulted in him being hospitalized for internal bleeding in 2007 and 2008. He alleges that he remained on extended lock-down for three years, between 2006 and 2009, during which he endured, witnessed or feared physical abuse by the officers. He also claims that Captain Seal caused him to be shackled and handcuffed everyday during that period and destroyed his legal papers. He further claims that during that time period, his cell was searched, he was stripped naked, and he endured anal searches by Captain Seal, all to humiliate him.[9] As relief, Gonzalez seeks compensatory damages for his injuries, pain and suffering.

In the 2009 complaint, as amended, and as referenced herein, Gonzalez claimed that, beginning on July 18, 2006, he was subjected to harassment, abuse, and violence at RCC. He claimed that excessive force was used against him on November 11, 2009, purportedly in retaliation for having filed the prior lawsuit in 2006 addressing other abuse by the prison guards. Specifically, Gonzalez contended that, on November 11, 2009, Captain Seal struck him in the head, knocked him out, and kicked his body. CSM Leary and Lieutenant Peters were present at the beating and did nothing to stop it. This resulted in injuries to his leg, knee, and rib cage and otherwise caused him to suffer blood loss. In addition to these physical injuries, Gonzalez claimed that he suffered

---

[8]Gonzalez also attached a copy of an affidavit dated June 4, 2010, in which he declares that on March 4, 2010, he saw Officer David Alford and Captain Seal use excessive force against inmate Jason Kron. Gonzalez describes what he saw and heard, including the physical injuries, such as bruising and swelling to Kron's arms.

[9]Gonzalez submitted a pleading which was filed by the clerk of this Court as a supplement to his complaint. Rec. Doc. No. 8. In that pleading, Gonzalez simply repeats his claims that he was beaten by the defendants and other officers at RCC between 2006 and 2009. He also attaches administrative records including prison disciplinary and investigative reports and other records related to his efforts to exhaust administrative remedies in and before 2010.

4

emotional distress and humiliation.  He indicated that EMT Forbes ignored his pain and suffering. He further alleged that Warden Tanner was placed on notice of the abusive conduct through the many complaints and grievances filed, but he failed to take disciplinary action against Lieutenant Smith, who repeatedly used excessive force against him. He also alleged that Assistant Warden Miller, Mike Harrell, Secretary LeBlanc and Chief Travis denied him due process during the investigation of his complaints.  He further claims that Assistant Warden Branch and Deputy Warden Bickham were present at or knew about the beatings and did nothing to stop them.

**B.     Defendants' First Motion to Dismiss**

The defendants filed a motion (Rec. Doc. No. 15) seeking dismissal of Gonzalez's excessive force and access to court claims against them for failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  The defendants argue that they are entitled to qualified immunity because Gonzalez has failed to plead facts sufficient to state a basis for the defendants' liability, how any defendant violated a constitutional right, or why any defendants' conduct was objectively unreasonable in light of clearly established law.

In opposition to the defendants' motion, Gonzalez alleges that they are not entitled to qualified immunity as there was no "prison disturbance" or riot to justify the force.  He asserts that he was the only inmate, at 59 years old, and was wearing shackles and handcuffs.  He reiterates that he continues to suffer with pain and blood clots in his left leg.  He further claims that the prison administration enjoys harming inmates and awarded Captain Seal for his actions.

In addition, Gonzalez sought to supplement his claims to clarify the underlying basis for his excessive force claims to clarify his intent to include the claims pursued and other defendants named in the prior 2009 case. He referenced his supplemental claims and arguments in the opposition/motion to supplement (Rec. Doc. No. 16) and the attachments thereto.

On November 14, 2013, the undersigned issued a Partial Report and Recommendation on Defendants' motion, and Gonzalez's opposition / Motion to Supplement (Rec. Doc. No. 16). *See e.g.,* Rec. Doc. No. 17. The undersigned found that based on Rule 15(a) Gonzalez's *pro se* pleadings should be afforded a broad construction, and afforded him the opportunity to supplement his current complaint with the additional defendants and claims that he referenced from his 2009 case.

The supplement to Gonzalez's complaint also sought to include allegations that the abuse against him began on July 18 or 19, 2006, which was the subject of another lawsuit in 2006 against Lieutenant Smith and Lieutenant John Tullos and that in November 2009, Captain Seal with CSM Brooks and Tynes, without any reason, threw him against the wall, hit him, and kicked him, resulting in physical injuries. He further alleged that the conduct constituted excessive force, that they failed to protect him, and that he was denied due process of law. He argued that the facts he has alleged are sufficient to raise the issue of excessive force under the Eighth Amendment. In identifying the exhibits to his opposition/motion, Gonzalez again reiterates his intent to refile his claims from Civ. Action No. 09-7707"J"(4), which the Court has already outlined in the statement of facts, *supra*.

The Defendants previously filed a motion to dismiss, which was granted in all respects with the exception of Gonzalez's § 1983 claims of excessive force against Captain Seal, CSM Brooks, and CSM Tynes.[10]

### C.   <u>Defendants' Second and Third Motions to Dismiss</u>

As to Defendants' Second Motion to Dismiss, Defendants EMT Bruce Forbes, Warden Robert Tanner, Major Michael Harrell, Operations Chief Jeffrey Travis, Secretary James LeBlanc, Deputy

---

[10]Gonzalez's supplemental complaint was granted by the undersigned and was docketed as Rec. Doc. No. 18. When the District Judge later adopted the Report and Recommendation, a duplicate copy of Rec. Doc. No. 18 was filed as Rec. Doc. No. 22. This report and recommendation shall address both as one, Rec. Doc. No. 18.

Warden Keith Bickham, and Assistants Warden Jerry P. Miller and Ronald Branch [11] seek dismissal of Gonzalez's 42 U.S.C. § 1983 claims against these defendants pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted on the basis of qualified immunity.

As to Defendants' third motion to dismiss, Defendants Captain Ronnie Seal, Corrections Sergeant Master Douglas Brooks (incorrectly sued as "CSM Brook") and Corrections Sergeant Master Jonathan Tynes (incorrectly sued as "CSM Tynes A. Jonathan") and CSM Larry Weary,[12] seek to dismiss Gonzalez's 42 U.S.C. § 1983 claims against these defendants based on prescription. However, before proceeding to the merits of defendants' motions, the Court is called upon to conduct its statutory review for frivolousness of this *in forma pauperis* complaint under 28 U.S.C. § 1915 *et seq.* and 42 U.S.C. 1997e.

## II.   Standards of Review

### A.   Frivolousness

Title 28 U.S.C. § 1915A and Title 42 U.S.C. § 1997e(c)(1) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous or otherwise fail to state a claim for which relief can be granted. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

---

[11]Defendants contend that J.P. Miller, and Rob Branch have both retired from DPSC, have not been served, and are not appearing herein. However, they also contend that the qualified immunity defense raised by the moving defendants applies equally to Branch and Miller and, pursuant to 28 U.S.C. §1915 and/or 42 U.S.C. §1997e, they may be dismissed without requiring service or an appearance. *Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009) (quoting *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990)). *See* Rec. Doc. No. 23, p. 1.

[12] *See supra,* n. 2.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

### B.    Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must accept all well-pleaded facts as true, viewing the complaint in the light most favorable to the plaintiff. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

The Supreme Court, however, has declared that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (internal citation omitted). Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and "[t]he plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *Guidry*, 512 F.3d at 180 (quotation marks omitted). The United States Supreme Court also has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted).

In determining whether a complaint states a claim that is plausible on its face, the court "draw[s] on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, as mentioned above, to avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). In order for a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise "more than a sheer possibility" that the defendant has violated the law as alleged. *See Id*. Furthermore, the factual allegations must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

The United States Fifth Circuit Court of Appeals has held that, when reviewing *pro se* complaints, the court must employ less stringent standards. *Bohannan v. Doe*, __ F. App'x __, 2013 WL 2631197, at *4 (5th Cir. Jun. 12, 2013) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). In the prisoner context, the Court previously explained:

> It is the responsibility of the courts to be sensitive to possible abuses [in the prison systems] in order to ensure that prisoner complaints, particularly pro se complaints, are not dismissed prematurely, however unlikely the set of facts postulated. An opportunity should be provided the prisoner to develop his case at least to the point where any merit it contains is brought to light.

*Taylor v. Gibson*, 529 F.2d 709, 713-14 (5th Cir. 1976); *see also*, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

### C.   <u>Qualified Immunity</u>

Qualified immunity shields government officials from individual liability for performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Colston v. Barnhart*, 130 F.3d 96, 98 (5th Cir. 1997); *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 532-33 (5th Cir. 1997) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). To assess a defendants' qualified immunity defense, the Court utilizes a two-step process. *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011); *Jacobs v. West Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000); *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998) (on appeal after remand); *Colston*, 130 F.3d at 99. Courts have discretion to decide which prong of the qualified-immunity analysis to address first. *Morgan*, 659 F.3d at 371 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

The first step is to determine whether the plaintiff has alleged a violation of a clearly established constitutional right under currently applicable constitutional standards. *Jacobs*, 228 F.3d at 393; *Hare*, 135 F.3d at 325; *Coleman*, 113 F.3d at 533. In determining whether a right is clearly established, this court looks to precedent from the Fifth Circuit and the Supreme Court. *McClendon v. City of Columbia,* 305 F.3d 314, 322 (5th Cir. 2002). Therefore, a right is considered to be clearly established if, based on pre-existing law, the unlawfulness of the conduct in question is apparent. *Id.* In other words, the right is clearly established if its "'contours . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (other citations omitted); *accord Foster v. City of Lake Jackson*, 28 F.3d 425, 29 (5th Cir. 1994).

When the plaintiff alleges a constitutional violation so as to satisfy the first prong, the second step requires the Court to determine whether defendant's conduct was objectively reasonable under existing clearly established law. *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001); *Jacobs*, 228 F.3d at 393; *Foster*, 28 F.3d at 428-29. Officials who act reasonably but mistakenly are still entitled to the defense. *Ashcroft v. al-Kidd*, __ U.S. ___, 131 S. Ct. 2074, 2085 (2011). "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *al-Kidd*, 131 S. Ct. at 2085 (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986)); *see also*, *Creighton*, 483 U.S. at 641. The court can determine as a matter of law whether a defendant is entitled to qualified immunity and, specifically, whether a defendant's conduct was objectively reasonable. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000); *White v. Balderama*, 153 F.3d 237, 241 (5th Cir. 1998); *Colston*, 130 F.3d at 99.

In response to a qualified immunity defense, "plaintiffs suing governmental officials in their individual capacities must allege specific conduct giving rise to the constitutional violation." *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir.1999); *see also* Fed. R. Civ. P. 7(a). The heightened pleading standard applicable in cases defended on qualified immunity grounds requires a plaintiff to plead "with factual detail and particularity, not mere conclusory allegations." *Id.*; *see also Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995). In the § 1983 context, this standard translates in part into the requirement that the plaintiff "identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Anderson*, 184 F.3d at 443; *DeLeon v. City of Dallas*, 141 F. App'x 258, 261 (5th Cir. 2005).

### III.   <u>Analysis</u>

#### A.   <u>Defendants in Their Official Capacities</u>

Gonzalez alleges claims against EMT Bruce Forbes, Warden Robert Tanner, Major Michael Harrell, Operations Chief Jeffrey Travis, Secretary James LeBlanc, Deputy Warden Keith Bickham, Captain Ronnie Seal, Corrections Sergeant Master Douglas Brooks (incorrectly sued as "CSM Brook") and Corrections Sergeant Master Jonathan Tynes (incorrectly sued as "CSM Tynes A. Jonathan") and CSM Larry Weary, in both their official and individual capacities. *See e.g.,* Rec. Doc. No. 1, 17, and 18.

However, the Court finds that Gonzalez may not sue any of the above named defendants in their official capacities, as this type of relief is barred by the Eleventh Amendment. First, a state actor in his official capacity is not considered to be a person for purposes of suit under § 1983. *Will v. Michigan Dept. of St. Police*, 491 U.S. 58 (1989). Next, suit against an employee or officer of the Louisiana Department of Corrections, in his official capacity, is suit against the State, which is barred by the Eleventh Amendment immunity doctrine. *Muhammad v. Louisiana*, No. 99-2694 c/w 99-3742, 2000 WL 1568210 (E.D. La. Oct. 18, 2000); *Citrano v. Allen Corr. Center,* 891 F. Supp. 312, 320 (W.D. La. 1995) ("A suit against any state correctional center would be suit against the state and therefore barred by the Eleventh Amendment.") (citing *Anderson*, 655 F. Supp. at 560 and *Building Engr. Serv. Co., Inc. v. Louisiana*, 459 F. Supp. 180 (E.D. La. 1978)). As a result, Gonzalez's claims against all the defendants in their official capacities are barred by the Eleventh Amendment, and should therefore be dismissed as frivolous and / or otherwise for failure to state a claim upon which relief may be granted pursuant to 42 U.S.C. § 1983 and 1997e.

B.     **Defendants in Their Individual Capacities**

1.     **Warden Robert Tanner**

a.     **Failure to Discipline Prison Officials**

Gonzalez's 2009 complaint, as amended, and supplemental complaint, as referenced herein, claimed that beginning on July 18, 2006, he was subjected to harassment, abuse, and violence at RCC. Specifically, he alleges that excessive force was used against him on November 11, 2009, purportedly in retaliation for having filed the prior lawsuit in 2006 addressing other abuse by the prison guards. As to Warden Tanner, Gonzalez alleges that Warden Tanner was placed on notice of the abusive conduct through the many complaints and grievances filed, as far back as 2006, but he failed to take disciplinary action against Lieutenants Smith and Tullo[13] [sic] and Captain Seal, who Gonzalez alleged repeatedly used excessive force against him. *See e.g.,* Rec. Doc. No. 17; *see also* Rec. Doc. No. 28, p. 2. Gonzalez also alleges that Warden Tanner was in "confabulation [sic] with everything that happened to him," and that Warden Tanner's alleged inaction towards the prison officials constituted a violation of his constitutional rights. *Id.*

Federal policy affords prison administrators a wide discretion in implementing prison procedures and policy. *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986); citing *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). *See also Gibbs v. King,* 779 F.2d 1040, 1044 (5th Cir. 1986)(" . . . the federal policy is to afford wide discretion to prison officials)(citing *Bell,* 441 US at 547); *Stewart v. Thigpen,* 730 F.2d 1002, 1005 (5th Cir.1984). That "deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline." *Id.*

---

[13]The Court recognizes that John Tullos is not a party to this matter, but references him because Gonzalez asserts that he was party of the incident between he, Captain Seal, and Lieutenant Smith.

However, "[i]t does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." *Id.*

Here, Gonzalez alleges that because Warden Tanner allegedly knew of the conduct that occurred with Lieutenants Smith, Tullo [sic] and Captain Seal, but failed to take disciplinary action against them, he violated his constitutional rights. *See e.g.,* Rec. Doc. No. 17, Rec. Doc. No. 28, p. 2. However, Gonzalez fails to state how Warden Tanner knew of this conduct. Rather, Gonzalez alleges that Warden Tanner's "inaction" by failing to discipline the prison officials for their alleged wrongdoing against him was in violation of his constitutional rights.

Because prison officials are afforded great deference in the "adoption and execution of policies [,] practices [and disciplinary practices] that in their judgment are needed to preserve internal order and discipline and to maintain institutional security," the Court finds that Gonzalez is unable to state a cognizable claim for a constitutional violation of his rights in Warden Tanner's alleged failure to discipline the prison officials. *Turner v. Johnson*, 46 F. Supp. 2d 655, 663-64 (S.D. Tex. 1999) (citing *Pell v. Procunier,* 417 U.S. 817, 827 (1974) ("[s] uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record [ . . . ] courts should ordinarily defer to their expert judgment in such matters.").  As such, the Court finds that Gonzalez's due process claims against Warden Tanner as to his failure to discipline prison officials are frivolous and should be dismissed for failing to state a cognizable claim for relief under 42 U.S.C. §1983.

### b.    Supervisory Liability

Although somewhat unclear from Gonzalez's complaint and supplemental complaint, in his memorandum in opposition to Defendants' motion to dismiss, he appears to contend that Warden

14

Tanner may be liable under a theory of supervisory liability. Specifically, he contends that Warden Tanner may be liable as a supervisor over the officers who allegedly engaged in the conduct with Gonzalez. *See* Rec. Doc. No. 28, p. 2.

As a supervisory official over the jail, Warden Tanner would not be vicariously liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate at the jail allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). He only would be liable under § 1983 if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980). Gonzalez does not allege in any particular way that Warden Tanner was actually involved in the complained of incident.

Gonzalez, therefore, has not demonstrated a personal connection or action that would render Warden Tanner liable under § 1983. Thus any supervisory liability claims against the Warden are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

> **2.      Assistant Warden Jerry Miller, Major Michael Harrell, Operations Chief Jeffrey Travis and Secretary James LeBlanc**

Gonzalez alleges that Defendants, Assistant Warden Jerry Miller,[14] Major Mike Harrell, Secretary Leblanc and Chief Travis, denied him due process during the investigation of his

---

[14]Although Jerry Miller has not been served and has not appeared herein, pursuant to 28 U.S.C. §1915 and/or 42 U.S.C. §1997e, he may be dismissed without requiring service or an appearance. *Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009) (quoting *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990) ("the district court may dismiss an in forma pauperis proceeding 'before service of process or before the filing of the answer' as long as certain safeguards are met.'").

complaints against the prison officials, and are therefore liable to him pursuant to 42 U.S.C. §1983. Specifically, Gonzalez alleges that he attempted to speak with Assistant Warden Jerry Miller and Major Michael Harrell after the incidents, but was unable to, and therefore was violated his due process rights. *See e.g.,* R. Doc. 28, p. 3-4. As to Chief Jeffrey Travis and Secretary James Leblanc, Gonzalez alleges that both of these men were involved in the investigation of his prison grievances, but because his grievance appeals were denied, they allegedly violated his due process rights. *Id.*

In the prison context, "disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974). Instead, "there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Id.* Accordingly, prisoners only enjoy procedural safeguards to the extent necessary to protect substantive rights. *See Washington v. Harper,* 494 U.S. 210, 220 (1990) ("Procedural protections must be examined in terms of the substantive rights at stake.").

The United States Supreme Court has held that the only liberty interest a prisoner may protect through § 1983 is "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995).While *Sandin* made it clear that punishments which impact upon the duration of confinement, or which exceed the sentence in an unexpected manner, may give rise to protection by the Due Process Clause, more routine disciplinary action will not invoke this constitutional protection.

As such, it has been established that prisoners do not have a due process right to a thorough investigation of grievances. *DeShaney v. Winnebego Soc. Servs.*, 489 U.S. 189, 196 (1989) (The Due Process Clause confers no right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual); *Pine*

16

*v. Sealty,* No. 9:09–CV–1198, 2011 WL 856426, at *9 (N.D.N.Y. Feb. 4, 2011) ("the law is ... clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials").

Prisoners also do not have a protected liberty interest in having grievances resolved to their satisfaction. "A prisoner has a liberty interest only in 'freedom[s] from restraint ... impos[ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," but a prisoner does not have a "federally protected liberty interest in having these grievances resolved to his satisfaction." *Geiger v. Jowers*, 404 F.3d 371, 373-74, n.7 (5th Cir. 2005); citing *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir.1995) (quoting *Sandin v. Conner*, 515 U.S. at 484). *See e.g., Woods v. First Corr. Med., Inc.,* 446 Fed. App'x. 400, 403 (3d Cir. 2011);(*citing Flick v. Alba,* 932 F.2d 728m, 729 (8th Cir. 1991) (an inmate does not have a "free-standing constitutionally right to an effective grievance process.").

Because Gonzalez asserts a due process claim on "a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless." *Id.* As such, the Court finds that Gonzalez's due process claims against Major Michael Harrell, Operations Chief Jeffrey Travis and Secretary James LeBlanc as to their involvement in the grievance procedure are frivolous and should be dismissed for failing to state a cognizable claim for relief under 42 U.S.C. §1983. *See also Banks v. Cain*, Civ.A.03-310-D-M1, 2003 WL 23997326 at *1-2 (M.D. La. Aug. 12, 2003) (prisoner does not have constitutionally protected right to a favorable appeal decision in disciplinary proceedings).

### 3.    EMT Bruce Forbes

Gonzalez alleges that EMT Bruce Forbes ("EMT Forbes") following his alleged November 11, 2009 incident with Captain Seal, ignored his pain and suffering. *See e.g.,* Rec. Doc. No. 17, p.

4. Specifically, Gonzalez alleges that EMT Forbes saw him after the incident and looked at him "like a piece of meal hang" with an "I don't care" expression on his face even though Gonzalez attempted to speak to him. *See e.g.,* Rec. Doc. No. 28, p. 3. As a result, Gonzalez contends that EMT Forbes was "indifferent" to his pain, because of his alleged friendship with Defendant Seal. *Id.* Gonzalez contends that EMT Forbes' conduct was unlawful as he "did not [sic] care about his pain." *Id.*

The standard of conduct for providing medical care to inmates under the Eighth Amendment was clearly established by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97 (1976).  In *Estelle*, the Court held that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Id.* at 104.  This is true where the indifference is manifested by prison doctors in their response to the prisoner's needs. It is also true where the indifference is manifested by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.* In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id.*

"Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).  The *Farmer* definition applies to Eighth Amendment medical claims. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994).  Thus, an inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (quotation omitted).  The plaintiff must show that

18

defendants "exhibited deliberate indifference to his serious medical needs." *Cooper v. Johnson*, 353 F. App'x 965, 967 (5th Cir. 2009) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993).

Further, a plaintiff must establish that the defendant possessed a culpable state of mind. *Farmer*, 511 U.S. at 838-39 (citing *Wilson*, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would <u>clearly evince a wanton disregard</u> for any serious medical needs.'" *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009); *Bohannan*, 2013 WL 2631197, at *6 (citing *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)). "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997).

However, disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. *Id.* at 292. Therefore, inadequate medical treatment of inmates may, at a certain point, rise to the level of a constitutional violation, while malpractice or negligent care does not. *Abron v. Clerk of Court,* No. 10-1632, 2011 WL 4006602 (E.D. La. Aug. 5, 2011) *report and recommendation adopted*, No. 10-1632, 2011 WL 4007855 (E.D. La. Sept. 8, 2011); *Mendoza*, 989 F.2d at 193 (5th Cir.1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983"); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir.1982) ("mere negligence in giving or failing to supply medical treatment would not support an action under Section

1983")(emphasis added)); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir.1989).

Here, Gonzalez alleges that EMT Forbes ignored his pain and suffering by looking at him with a certain expression on his face and because of his alleged friendship with another defendant in this matter. *See e.g.,* Rec. Doc. Nos. 17 and 28. These allegations, although somewhat vague, survive the Court's frivolous review, as Gonzalez seemingly alleges that the deprivation by EMT Forbes may have resulted in the denial of "minimal civilized measure of life's necessities" or that he had a "culpable state of mind" which would have offended evolving standards of decency.  *See e.g., Farmer*, 511 U.S. at 834, 838-39; *Cooper*, 353 F. App'x at 967; *accord Harris*, 198 F.3d at 159; *Mendoza,* 989 F.2d at 193. *See also Wilson*, 501 U.S. at 298. As such, the Court finds that Gonzalez's claim against EMT Forbes is not frivolous, as he has at least stated a cognizable claim for relief under 42 U.S.C. § 1983, and shall be addressed in conjunction with the issue of prescription, addressed in detail below.

### 4.      Deputy Warden Keith Bickham and Assistant Warden Ronald Branch

#### a.      Bystander Liability / Failure to Protect

Gonzalez alleges that Deputy Warden Keith Bickham ("Bickham") and Assistant Warden Ronald Branch ("Branch")[15] allegedly violated his constitutional rights because Branch and Bickham were allegedly present at or knew about the beatings that occurred, and did nothing to stop them. *See e.g.,* Rec. Doc. No. 17 & 18.  In his memorandum in opposition to Defendants' motion to dismiss, Gonzalez further alleges that ". . . Bickham before he was warden eh was the number one kick a-s . . . [and that] he is in big confabulation [sic] with Lieutenant Smith and Captain Seal." *See* Rec. Doc.

---

[15]Although Ronald Branch has not been served and has not appeared herein, pursuant to 28 U.S.C. §1915 and/or 42 U.S.C. §1997e, he may be dismissed without requiring service or an appearance. *Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009) (quoting *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990) ("the district court may dismiss an in forma pauperis proceeding 'before service of process or before the filing of the answer' as long as certain safeguards are met.'").

No. 28, p. 2. Gonzalez does plead a plausible claim that Branch and Bickham were either present at, knew about, or failed to stop the alleged incidents from occurring.

The Fifth Circuit has held that 42 U.S.C. § 1983 bystander liability may attach to a prison official and or police officer who is present at the scene of an officer's use of excessive force and does not take reasonable measures to protect a suspect therefrom. *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013); citing *Hale v. Hale,* 45 F.3d 914 (5th Cir. 1995). Under § 1983, an officer may be liable under § 1983, under a theory of bystander liability where the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Id.* citing *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 204 (4th Cir.2002) (footnote omitted); *see, e.g., Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir.2009); *Smith v. Mensinger*, 293 F.3d 641, 650-51 (3d Cir.2002); *see also Nowell v. Acadian Ambulance Serv.*, 147 F.Supp.2d 495, 507 (W.D.La.2001).

However, liability "will **not** attach where an officer is not present at the scene of the constitutional violation." *Whitley,* 726 F.3d at 646-47; citing *Snyder v. Trepagnier*, 142 F.3d 791, 801 n. 11 (5th Cir.1998) (citing *Hale*, 45 F.3d at 919); *see also Gilbert v. French*, 364 Fed.Appx. 76, 83 (5th Cir.2010) (per curiam) (unpublished); *Ibarra v. Harris Cnty. Tex.*, 243 Fed.Appx. 830, 835 & n. 8 (5th Cir.2007) (per curiam) (unpublished) ("A bystander liability claim requires the plaintiffs to show that the officer was present at the scene and did not take reasonable measures to protect a suspect from excessive force.").

To determine whether a plaintiff has sufficiently "alleged a bystander liability claim we also consider whether an officer 'acquiesce[d] in' the alleged constitutional violation." *Whitley,* 726 F.3d at 647; *Hale*, 45 F.3d at 919; *see Baker v. Monroe Twp.*, 50 F.3d 1186, 119-94 (3d Cir.1995) (premising liability on senior officer's knowledge of, and acquiescence in, treatment of victim); *see*

*also Peavy v. Dall. Indep. Sch. Dist.*, 57 F.Supp.2d 382, 390 n. 4 (N.D.Tex.1999) (*Hale* inapplicable where defendant did not acquiesce in any conduct violating plaintiff's constitutional rights).

Here, the Court finds that Gonzalez alleges that both Bickham and Branch were present at or allegedly knew about the beatings that occurred to him. These allegations are enough on their face to state at least a cognizable claim for relief against these parties, as Bickham and Branch's presence at the beatings support an "acquiescence" in the wrongful conduct, as both men were allegedly present at or knew about the beatings, but failed to stop the wrongful acts. *See e.g., Randall*, 302 F.3d at 204 n. 24 ("The rationale underlying the bystander liability theory is that a bystanding officer, by choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer."). Thus, Gonzalez's claims against Bickham and Branch are not frivolous, as he has at least stated a cognizable claim for relief under 42 U.S.C. § 1983. These claims shall therefore be addressed in conjunction with the Court's analysis of prescription as to the claims against issue of prescription, as to Defendants Captain Ronnie Seal, Corrections Sergeant Masters ("CSM") Douglas Brooks, Jonathon Tynes, Larry Weary and Lieutenant Darrell Peters.

### b.  Request for a Transfer

In addition to his claim that Branch was allegedly present and / or knew about the beatings that occurred, he also asserted in his memorandum in opposition to Defendants' motion to dismiss that Branch denied his request for a transfer to another prison facility after his stay in extended lock down. *See* Rec. Doc. No. 28, p. 3.

It is well settled, that a prisoner has no protected right arising from the Constitution itself to be housed in any particular facility or to be transferred from one prison facility to another, even if life in one prison may be much more disagreeable than in another. *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *McKune v. Lile*, 536 U.S. 24, 39 (2002). Further, a prisoner has no liberty or protected

property interest in being housed in any particular facility where the state statute vests discretion to the state officials to carry out their official function of placing inmates. *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996); *Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995); *Jackson v. Cain*, 864 F.2d 1235, 1250 (5th Cir. 1989); *Maddox v. Thomas*, 671 F.2d 949, 950 (5th Cir. 1982).

Under La. Rev. Stat. Ann. § 15:824, the Director of Corrections is authorized to decide which penal institution an inmate should be delivered or transferred.  The Director of Corrections has broad discretion regarding the placement and transfer of state prisoners.  *See Santos v. La. Dept. of Corr. Secretary*, No. 95-4125, 1996 WL 89260, at *4 (E.D. La. Feb. 28, 1996) (noting that La. Rev. Stat. Ann. § 15:824(A) and (B) do not give DOC prisoners a constitutionally protected right to be housed in a particular facility); *see also* La. Rev. Stat. Ann. § 15:566(B); *State v. Sylvester*, 648 So.2d 31, 33 (La. App. 4th Cir. 1994).

Thus, the State of Louisiana by its broad discretionary statutes has not created a protected liberty interest in being housed in a particular prison or being transferred from one prison to another. *Santos*, 1996 WL 89260 at *4.  Therefore, Gonzalez has no constitutional right to a transfer, and as such Gonzalez's claim that Branch's failure to approve his request for a transfer is frivolous and should be dismissed for failing to state a cognizable claim for relief under 42 U.S.C. §1983.

> **5.**     **Captain Ronnie Seal, Corrections Sergeant Masters ("CSM") Douglas Brooks, Jonathon Tynes, Larry Weary and Lieutenant Darrell Peters[16]**

In the 2009 complaint, as well as in his supplemental amended complaint, Gonzalez claimed

---

[16]Although Darrell Peters has not been served and has not appeared herein, pursuant to 28 U.S.C. §1915 and/or 42 U.S.C. §1997e, he may be dismissed without requiring service or an appearance. *Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009) (quoting *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990) ("the district court may dismiss an in forma pauperis proceeding 'before service of process or before the filing of the answer' as long as certain safeguards are met.'")).

that excessive force was used against him on November 11, 2009, purportedly in retaliation for having filed a prior lawsuit in 2006 addressing other abuse by the prison guards. Specifically, Gonzalez contended that, on November 11, 2009, Captain Seal struck him in the head, knocked him out, and kicked his body. Gonzalez also alleges that CSM Leary, Lieutenant Peters, Bickham and Branch were present at or knew about the beating and did nothing to stop it. This resulted in injuries to his leg, knee, and rib cage and otherwise caused him to suffer blood loss. In addition to these physical injuries, Gonzalez claimed that he suffered emotional distress and humiliation. Before the Court addresses the merits of this claim, the Court shall determine whether or not Gonzalez's claim against these defendants are prescribed as part of its frivolousness review. *See e.g., Johnson v. Lamartiniere*, 387 F. App'x 470 (5th Cir. 2010) (the Court may analyze prescription as part of its frivolous review); *Payton v. Nagin*, No. 08-4417, 2008 WL 4747421 (E.D. La.Oct. 17, 2008) (same).

Because there is no federal statute of limitations for § 1983 claims, the district court looks for comparison to the forum state's statute of limitations for personal injury claims. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985) (§ 1983 actions are best characterized as personal injury actions); *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998) (citing *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994)). *See See Burge v. Parish of St. Tammany*, 996 F.2d 786, 788 (5th Cir.1993) (citing *Hardin v. Straub*, 490 U.S. 536, 538-39(1989); *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir.1992)). In Louisiana, personal injury claims are governed by La. Civ. Code art. 3492, which provides the prescriptive period for delictual actions, which a period of one year from the date of injury or damage.[17] *See Jacobsen*, 133 F.3d at 319 (citing

---

[17]Article 3492 provides that: "[d]elictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage."

*Elzy v. Roberson*, 868 F.2d 793, 794 (5th Cir. 1989)).

Therefore, even though federal courts look to federal law to determine when a civil rights action accrues, *see Jackson*, 950 F.2d at 265, state law supplies the applicable limitations period and tolling provisions. *Harris v. Hegmann,* 198 F.3d 153, 156-57 (5th Cir. 1999); citing *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993) ("In applying the forum state's statute of limitations, the federal court should also give effect to any applicable tolling provisions."). Thus, similar to a Louisiana tort claim, under federal law, for purposes of calculating the limitations period, a §1983 action generally accrues when a plaintiff "knows or has reason to know of the injury which is the basis of the action." *Harris,* 198 F.3d at 156-57; citing *Jackson*, 950 F.2d at 265 (internal quotation marks omitted) (quoting *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir.1989)). *See Wallace*, 549 U.S. at 388; *Jacobsen*, 133 F.3d at 319; *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998). The Supreme Court has held that the limitations period begins to run at the point when "the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388 (citations omitted).

Much like the federal court borrows the state statute of limitations for §1983 claims, federal courts also look to state law for its tolling provisions. *See Burge,* 996 F.2d at 788. In Louisiana, the filing of a suit in a court of competent jurisdiction and venue interrupts the running of the statute of limitations and / or prescription on a claim. *See* LA. CIV. CODE. art. 3462. Furthermore, the prescriptive period on a prisoner's §1983 claim is tolled while the administrative remedy procedure is pending. *See Pamilton v. Prator,* No. 07-261-P, 2007 WL 2592302 at *1 (W.D. La. Aug. 17, 2007); citing *Harris,* 198 F.3d 153. *See also* LA. REV. STAT. § 15:1172(E) (liberative prescription in prisoner suits is suspended during the pendency of the Administrative Remedy Procedure). Therefore, the Court shall determine whether either of these tolling provisions apply to effectively toll prescription on Gonzalez's claims.

a.   **Filing of the 2009 Suit**

Here, Gonzalez claims that his civil rights were violated on November 11, 2009, the date of the alleged excessive use of force. Thus, prescription began to run on those claims on November 11, 2009. Gonzalez had one year to file his claim from the date of the incident, until November 11, 2010. Instead, prior to exhausting his administrative remedies, Gonzalez filed suit in this Court on December 23, 2009, against Lieutenant Smith, Captain Ronnie Seal, CSM Brooks and CSM Tynes alleging excessive force and retaliation for the conduct surrounding the November 11, 2009 incident, which would serve to effectively toll the running of prescription if this Court were a competent jurisdiction and venue. *See e,g.,* Rec. Doc. No. 1, No. 09-7709. However, his claim was premature which does not effectively toll the running of prescription.

Nonetheless, this action remained pending from 2009 until December 14, 2012, when the United States Court of Appeals for the Fifth Circuit found that Gonzalez's claims were prematurely filed in this Court, reversing the district court's finding on exhaustion and dismissing the case for failure to exhaust, under 42 U.S.C. §1997e(a). *See* Rec. Doc. No. 91, 114-15, No. 09-7709; *Gonzalez v. Seal,* 702 F.3d 785, 788 (5th Cir. 2012); citing *Woodford v. Ngo,* 548 U.S. 81 (2006), and *Jones v. Bock,* 549 U.S. 199 (2007) (finding that after these cases there can be no doubt that pre-filing exhaustion of prison grievance processes is mandatory).

Therefore, the filing and pendency of No. 09-7707, *Gonzalez v. Seal,* did not serve to effectively toll the running of liberative prescription on Gonzalez's claims. *See e.g., Gonzalez,* 702 F.3d at 788; *Cichirillo v. Avondale Indust., Inc.,* No. 2004-2894 (La. 11/29/05); 917 So. 2d 424, 431 (a premature suit does not suffice as an interruption of prescription pursuant to La. Civ. Code. art. 3462). Therefore, Gonzalez's claims are on their face prescribed unless the filing of his administrative grievance remedies filed during the pendency of the appeal; the first, ARP RCC-2009-628, filed on

November 24, 2009; the second, ARP RCC-2010-307, filed on July 28, 2010; and the third, ARP

RCC-2011-65, filed on February 21, 2011; served to toll the running of prescription of his claims up

to December 20, 2012, the filing date of the instant action.

**b.**     **Administrative Remedy Procedures**

In accordance with the Fifth Circuit's opinion in *Gonzalez v. Seal,* 702 F.3d 785, 788 (5th Cir.

2012), a prisoner must exhaust all available administrative remedies before bringing an action in

federal court regarding prison conditions. The Prison Litigation Reform Act ("PLRA") provides that:

> No action shall be brought with respect to prison conditions under § 1983 of this
> title, or any other federal law, by a prisoner confined in any jail, prison, or other
> correctional facility until such administrative remedies as are available are
> exhausted.

*See* 42 U.S.C. § 1997e. The United States Supreme Court has held that "the PLRA's exhaustion

requirement applies to all inmate suits about prison life, whether they involve general circumstances

or particular episodes, and whether they allege excessive force or some other wrong." *Porter v.*

*Nussle*, 534 U.S. 516, 532 (2002); *Wright v. Hollingsworth*, 260 F.2d 357, 358 (5th Cir. 2001).

Exhaustion of administrative remedies by inmates is mandatory "whether [the claims] involve general

circumstances or particular episodes, and whether they allege excessive force or some other wrong."

*Id* at 992. The United States Supreme Court has further held that "an inmate must exhaust irrespective

of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S.

731, 741 n. 6 (2001).

The prisoner grievance system in Louisiana's prisons is "available" for purposes of the 42

U.S.C. §1997e(a) exhaustion requirement. *Ferrington v. La. Dept. of Corrections*, 315 F.3d 529,

531-32 (5th Cir. 2002) (*cert denied*, 540 U.S. 883, 124 S.Ct. 206, (2003)). Louisiana's prisoner

grievance system is codified in the Corrections Administrative Remedy Procedure (CARP), La. R.S.

15:1171, et seq., and in the Department of Public Safety and Corrections' administrative regulations. *See* La. Admin. Code tit. 22, pt. I, § 325.

Because RCC is a correctional facility under the authority of the Louisiana Department of Public Safety and Corrections, a two-step administrative remedy procedure is in place. At the first step, an inmate submits his grievance to the Warden within ninety (90) days of the incident giving rise to the complaint. The Warden generally has forty (40) days in which to respond. If the Warden fails to respond, or if the inmate is dissatisfied with the warden's response, the inmate may proceed to the second step by requesting review of the matter by the Secretary of the Louisiana Department of Public Safety and Corrections. The inmate may do so by indicating in the appropriate space on the First Response Form and forwarding his dissatisfaction to the ARP screening officer within 5 days of receipt of the decision. *Id* at §325(G)(2)(a). The Secretary generally has forty-five (45) days in which to respond. *See* La. Admin. Code tit. 22, pt. I, § 325. Only after both steps are completed, and each element thereof, may the inmate file suit in district court. *Id.* at §325(G)(2)(b); *Walker v. Seal*, 2007 WL 1169364 (E.D. La. 04/19/07).

Here, Gonzalez alleges in the original complaint and in the amended complaint, that he filed three Administrative Remedy Procedure ("ARP") Grievances: ARP RCC-2011-65, ARP RCC-2009-0628, and ARP RCC 2010-307; related to the November 11, 2009 incident. *See e.g.,* Rec. Doc. 16-1, p. 26; Rec. Doc. 18, pp. 31-32. Gonzalez also alleges that he properly exhausted all three of these ARP proceedings to the second step of the grievance process to the Secretary of the Department, as required by the Louisiana Department of Public Safety and Corrections, before filing his December 20, 2012 action.[18]

---

[18]Because However, neither Gonzalez nor Defendants provided the exact dates as to when each of the above referenced ARP proceedings were exhausted. *See e.g.,* Rec. Doc. No. 1, p. 12. As a result, on April 10, 2014, this Court ordered defendants to submit into the record, the following ARP Grievance Proceedings, including but not limited to

The incident in question occurred on November 11, 2009. Therefore prescription began to run from November 12, 2009, until twelve (12) days later, on November 24, 2009, when Gonzalez filed a grievance regarding this incident, ARP Number RCC-2009-628, with prison officials. *See* No. 09-7707, Rec. Doc. No. 91, p.6, n.2 (citing Affidavit of Anna C. Morgan, ARP Screening Officer at RCC, Rec. Doc. No. 80-3). Therefore, liberative prescription ran on Gonzalez's claim for **12 days.**[19] The ARP was received by officials on November 30, 2009. Warden Tanner responded to Gonzalez's grievance with the "First Step Response Form" on January 12, 2010, denying Gonzalez's claim. *Id.* at Rec. Doc. No. 88-1, p. 7. The Form indicated that if a "party is not satisfied with this response, [he] may go to Step Two by checking below and forwarding [the response] to the ARP Screening Officer . . . within five days of your receipt of this decision." *Id.* at 7-8.

On January 14, 2010, Gonzalez signed the First Response Form, indicating that he wished to proceed to Step Two of the grievance process. *See id.,* at Rec. Doc. No. 10-1, pp. 13-14, No. 09-7707.[20] On March 23, 2010, Secretary LeBlanc responded to Gonzalez's grievance with the "Second Step Response Form," denying Gonzalez's claim. *See* R. Doc. 52-1, pp. 2, 8. Because the "ARP"

---

a copy of the actual grievance filed, the First and Second Step Response Forms, and any other documentation associated with ARP RCC-2011-65, ARP RCC-2010-307 and ARP RCC-2009-0628. *See* R. Doc. 51. On April 14, 2014, Defendants produced the entire file of each of these ARP grievances into the record. *See* R. Doc. 52. As such, the Court shall now proceed with determining whether Gonzalez's claims have been timely filed.

[19]Federal law controls when a § 1983 cause of action accrues for purposes of calculating the limitations period. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998); *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998). The claim accrues on the date when the plaintiff knew or had reason to know of the injury or that his rights were violated. *Id.* In calculating the one-year prescriptive period under Louisiana law applicable in this case, the Court begins the period on the day after the incident that triggered the period. *See* Fed. R. Civ. P. 6(a)(1)(A) (the day of the event is excluded from the calculation).

[20]Between Warden Tanner's denial of the First Response and Gonzalez's receipt thereof, Warden Tanner sent a letter to Gonzalez on January 12, 2010, indicating that the two letters Gonzalez attempted to write, the first to Secretary James LeBlanc, and the second to Chief Jeffrey Travis, dated December 28, 2009, were improper, as he failed to follow proper administrative procedures. In this letter, Tanner also informed Gonzalez that he had rendered a decision at the First Step of his ARP proceeding on January 12, 2010, and if Gonzalez disagreed with this decision he could proceed to the second step of the ARP procedure. *Id.* at 10-1, p. 15.

procedure for RCC is to exhaust grievances to the second step with the Secretary, Gonzalez could have brought suit in federal court after the March 23, 2010 denial. As a result, the running of liberative prescription was no longer interrupted after Secretary LeBlanc's denial of Gonzalez's grievance, on March 23, 2010.

As indicated in Gonzalez's complaint, he filed two other ARP grievances related to the November 11, 2009 incident. The first of these grievances, ARP RCC-2010-307, was filed on July 28, 2010, and received by Warden Tanner on July 29, 2010. *See* R. Doc. 52-2, pp. 2-4. Therefore, liberative prescription ran on Gonzalez's claim, uninterrupted from Wednesday, March 24, 2010, through Tuesday, July 27, 2010, for **126 days**. This lapse, plus the 12 days in between the actual incident and the filing of the grievance totals **138 days,** with only **227 days** remaining on the prescription time clock, since Gonzalez only had 365 days to file his lawsuit.

As to ARP RCC-2010-307, Warden Tanner responded to Gonzalez's grievance with the "First Step Response Form" on August 16, 2010, denying Gonzalez's claim. *Id.* On August 19, 2010, Gonzalez signed the First Response Form, indicating that he wished to proceed to Step Two of the grievance process. *See id.* On October 5, 2010, Secretary LeBlanc responded to Gonzalez's grievance with the "Second Step Response Form," denying Gonzalez's claim. *See* R. Doc. 52-1, pp. 2-3. Because the "ARP" procedure for RCC is to exhaust grievances to the second step with the Secretary, Gonzalez could have again brought suit in federal court after the October 5, 2010 denial. As a result, the running of liberative prescription was no longer interrupted after Secretary LeBlanc's denial of Gonzalez's grievance, on October 5, 2010.

The last ARP Gonzalez filed, ARP RCC-2011-65, related to the November 11, 2009 incident was filed and received by Warden Tanner on February 21, 2011. *See* R. Doc. 52-3, pp. 2-6. Therefore, liberative prescription ran on Gonzalez's claim, uninterrupted from Wednesday, October

6, 2010, through Monday February 21, 2011, for **139 days**; for a total of **277 days**, counting the period which prescription ran from the date of the incident to the filing of the first ARP, and the time between the exhaustion of the first and second ARP's. Therefore, Gonzalez only had 88 days after the exhaustion of this ARP to timely file his claims in this Court.

As to ARP RCC-2011-065, Warden Tanner responded to Gonzalez's grievance with the "First Step Response Form" on April 1, 2011, denying Gonzalez's claim. *Id.* Shortly thereafter, Gonzalez signed the First Response Form, indicating that he wished to proceed to Step Two of the grievance process. *See id.* at 2-4. On June 8, 2011, Secretary LeBlanc responded to Gonzalez's grievance with the "Second Step Response Form," denying Gonzalez's claim. *See* R. Doc. 52-3, pp. 2-3. Because the "ARP" procedure for RCC is to exhaust grievances to the second step with the Secretary, Gonzalez could have again brought suit in federal court after the June 8, 2011 denial. Therefore, prescription was no longer interrupted after Secretary LeBlanc's denial of Gonzalez's grievance, on June 8, 2011. As such, Gonzalez had 88 days, or until September 6, 2011, within which to timely file his petition before prescription ran on his claims.[21] However, Gonzalez filed the instant action in this Court on Thursday, December 20, 2012, **560 days** later, well over the 365 day prescriptive period.[22]

As such, Gonzalez's claims on their face against Captain Ronnie Seal, Corrections Sergeant Masters ("CSM") Douglas Brooks, Jonathon Tynes, Larry Weary, Lieutenant Darrell Peters, Deputy

---

[21]The final day of the prescriptive period was on Sunday, September 4, 2011, and the next business day was Labor Day, Monday, September 5, 2011, leaving the end date to fall on the next business day, Tuesday, September 6, 2011. *See* La. Code Crim. P. art. 13 (weekends and holidays not included in calculation when it would be the last day of the period).

[22]Under the prison mailbox rule, a prisoner's pleading is deemed to have been filed on the date that the *pro se* prisoner submits the pleading to prison authorities for mailing. *Causey v. Cain,* 450 F.3d 601, 604 (5th Cir. 2006)(citing *Houston v. Lack,* 487 U.S. 266, 270-71 (1988)). As such, liberative prescription ran uninterrupted from Thursday, June 9, 2011, until he filed the instant action in this Court, on Thursday, December 20, 2012, for **560 days**,

Warden Bickham, Assistant Warden Branch and EMT Forbes are prescribed, because the last date he could timely file his suit was September 7, 2011, but the suit was not filed until December 20, 2012. *See e.g., Pamilton v. Prator*, No. 07-261-P, 2007 WL 2592302 (W.D. La. Aug. 17, 2007). As such, Gonzalez's claims against these parties, as well as EMT Forbes, Deputy Warden Keith Bickham, and Assistant Warden Ronald Branch, who were also named in the lawsuit filed on December 20, 2012 are frivolous as they are prescribed under 42 U.S.C. §1983.

IV.     **Recommendation**

**IT IS RECOMMENDED** that Angelo A. Gonzalez's claims against defendants, EMT Bruce Forbes, Warden Robert Tanner, Major Michael Harrell, Operations Chief Jeffrey Travis, Secretary James LeBlanc, Deputy Warden Keith Bickham, Captain Ronnie Seal, Corrections Sergeant Master Douglas Brooks, Corrections Sergeant Master Jonathan Tynes, and Corrections Sergeant Master Larry Weary be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous for failing to state a cognizable claim upon which relief may be granted, and for prescription under 42 U.S.C. § 1983.

**IT IS FURTHER RECOMMENDED** that Defendants' **Motion to Dismiss Defendants Bruce Forbes, Robert Tanner, Mike Harrell, Jeffrey Travis, James LeBlanc, and Keith Bickham Based on Qualified Immunity (Rec. Doc. No. 23)** and **Motion to Dismiss Parties Based on Prescription (R. Doc. 24)** be **DENIED AS MOOT**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a

failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[23]

New Orleans, Louisiana, this 7th day of May, 2014.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[23]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.