UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANGELO A. GONZALEZ** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-0034** |
| **LT. RONNIE SEAL, LT. B. V. SMITH, CSM BROOK, CSM TYNES, JONATHAN A.** | **SECTION "J"(4)** |

## PARTIAL REPORT AND RECOMMENDATION

Before the Court is a **Motion to Dismiss Based on Qualified Immunity (Rec. Doc. No. 79)** filed by the defendants, Emergency Medical Technician ("EMT") Bruce Forbes, Deputy Warden Keith Bickham, Assistant Warden Ronald Branch, Corrections Sergeant Master ("CSM") Larry Weary, and Lieutenant Darrell Peters seeking dismissal of all claims against them pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted and asserting they are entitled to qualified immunity. The motion is opposed by the plaintiff, Angelo A. Gonzalez. Rec. Doc. No 82.

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. §636(b)(1)(B) and (C), and §1915A, and as applicable, 42 U.S.C. §1997e (c)(1) and (2)**.

### I. Factual and Procedural Background

#### A. The Complaint and Supplemental Claims

The plaintiff, Angelo A. Gonzalez ("Gonzalez"), was an inmate incarcerated in the B.B. "Sixty" Rayburn Correctional Center ("RCC") at the time of the filing of this *pro se* and *in forma*

*pauperis* complaint pursuant to 42 U.S.C. § 1983, although he is no longer incarcerated.[1] He sued the movants/defendants, Forbes, Bickham, Branch, Weary, and Peters, and other defendants, Captain Ronnie Seal, Lieutenant Blandon Vernon Smith, CSM Douglas Brooks, CSM Jonathan Tynes, Assistant Warden Jerry P. Miller, Operations Chief Jeffrey Travis, Warden Robert Tanner, Major Michael Harrell, Secretary James LeBlanc of the Louisiana Department of Corrections ("DOC") seeking damages for the alleged repeated use of excessive force against him between 2006 and 2009 while he was housed in RCC.

Gonzalez alleges that defendants Smith, Seal, Brooks and Tynes subjected him to physical abuse by beating and kicking him which resulted in bruises on his knees and ankles. Attached to his complaint were copies of memoranda captioned for his prior civil rights case in this Court, Civ. Action No. 09-7707"J"(4), which was dismissed for failure to exhaust administrative remedies prior to its filing. Construing the instant complaint and related supplemental pleadings broadly, Gonzalez included in the present case many of the claims raised in his prior case.

Gonzalez claims in his multiple pleadings, that in 2007, Lieutenant John Tullos (who is not a defendant in this case) punched him in the chest. He further alleges that he was hospitalized once in 2007 and once in 2008 for internal bleeding, a broken rib, and ulcers after being kicked in the ribs by other unidentified RCC officers. He further claims that he was beaten again by RCC officers in November of 2009, while shackled and naked on the floor. He asserts that this history of beatings has made him paranoid and schizophrenic. He also lists the names of other inmates, who are not parties to this suit, whom he claims were also beaten by guards while defenseless.

Gonzalez also alleges that he remained on extended lock-down for three years, between 2006 and 2009, during which he endured, witnessed, or feared physical abuse by the officers. He

---

[1] Rec. Doc. No. 1, 75.

also claims that Captain Seal caused him to be shackled and handcuffed every day during that period and had his legal papers destroyed. He further claims that during that time period, his cell was repeatedly searched and he often was stripped naked.

In the 2009 complaint, as amended and re-urged by reference herein, Gonzalez claimed that, beginning on July 18, 2006, he was subjected to harassment, abuse, and violence at RCC. He claimed that excessive force was used against him on November 11, 2009, purportedly in retaliation for having filed a prior lawsuit in 2006 addressing other abuse by the prison guards. Specifically, Gonzalez asserted that, on November 11, 2009, Captain Seal struck him in the head, knocked him out, and kicked his body. CSM Weary and Lieutenant Peters were present at the beating and did nothing to stop it. This he claimed resulted in injuries to his leg, knee, and rib cage and otherwise caused him to suffer blood loss.

In addition to these physical injuries, Gonzalez claimed that he suffered emotional distress and humiliation. He indicated that EMT Forbes ignored his pain and suffering. He further alleged that Warden Tanner was placed on notice of the abusive conduct through the many complaints and grievances he filed, but the Warden failed to take disciplinary action against Lieutenant Smith, who also repeatedly used excessive force against Gonzalez. He also alleged that Assistant Warden Miller, Major Harrell, Secretary LeBlanc, and Chief Travis denied him due process during the investigation of his complaints. He further claims that Assistant Warden Branch and Deputy Warden Bickham were present at or knew about the beatings and did nothing to stop them.

### B. **Procedural Background and Current Posture of the Case**

Over the years the instant action has been pending before the Court, several of the named defendants have been dismissed from the lawsuit on the Court's review of the many motions filed by defendants. Specifically, by Order issued December 2, 2013, Gonzalez's claims of excessive

force against Lt. Smith, retaliation claims against Lt. Smith and Captain Seal, and denial of access to the court claim against Seal were dismissed for failure to state a claim for which relief can be granted.[2]  On June 4, 2014, the Court dismissed Gonzalez's claims against EMT Forbes, Warden Tanner, Major Harrell, Chief Travis, Secretary LeBlanc, Deputy Warden Bickham, Captain Seal, CSM Brooks, CSM Tynes and CSM Weary, each in their official capacities finding the claims to be frivolous and fail to state a claim for which relief could be granted.[3]  In that same order, the Court also dismissed as frivolous the other claims against Warden Tanner, Assistant Warden Miller, Major Harrell, Chief Travis, and Secretary LeBlanc, as well as the transfer and due process claims asserted against Deputy Warden Bickham and Assistant Warden Branch.

After appeal by Gonzalez on the dismissal of his remaining 2009 claims as prescribed, the United States Fifth Circuit remanded the matter for this Court to consider the balance of the defendants' motion on the issue of qualified immunity.[4]  By order of this Court, the defendants' have filed the instant motion to dismiss addressing the qualified immunity defense.[5]  Since that time, on May 11, 2018, the Court also has ordered the dismissal of Gonzalez's claims against Lt. Peters and Assistant Warden Branch under Fed. R. Civ. P. 4(m) for Gonzalez's failure to serve these defendants within 120 days of the filing of the complaint against them.[6]

A current review of the entire record reflects that, based on the prior Orders of the Court, the following claims remain before the Court against the respective remaining defendants in their

---

[2] Rec. Doc. No. 21.

[3] Rec. Doc. No. 56.

[4] Rec. Doc. No. 70.

[5] Rec. Doc. No. 74, 79.

[6] Rec. Doc. No. 84.

individual capacities:[7] (1) Gonzalez's § 1983 claim of inadequate medical care against Forbes; (2) (2) Gonzalez's § 1983 excessive force through bystander liability claim against CSM Weary for failure to intervene in the alleged beating on November 11, 2009; (3) Gonzalez's § 1983 excessive force through bystander liability claim against Deputy Warden Bickham for failure to stop the beatings at the jail; and (4) Gonzalez's § 1983 excessive force claims against Captain Seal, CSM Brooks, and CSM Tynes.

### C. Defendants' Current Motion to Dismiss (Rec. Doc. No. 79)

The defendants assert that Gonzalez's remaining claims against EMT Forbes, CSM Weary, Lt. Peters, Deputy Warden Bickham, and Assistant Warden Branch should be dismissed because the plaintiff has not alleged sufficient facts to show that they violated his constitutional rights, therefore entitling them to qualified immunity and to have the § 1983 claims against them dismissed. The defendants contend that Gonzalez fails to allege any facts identifying whether and to what extent Gonzalez suffered physical harm as a result of EMT Forbes's actions or identify how the moving defendants' actions violated his constitutional rights.

Gonzales opposes the dismissal of the claims against each of these defendants.[8] He argues that the moving defendants should remain in the lawsuit because they witnessed the beatings that occurred and failed to protect him. He also contends that the DOC officers were aware of the violations and failed to provide a solution. He alleges that EMT Forbes was "mannequin" who was manipulated by the other prison officials.

---

[7] Rec. Doc. No. 84.

[8] *See* Rec. Doc. Nos. 54, 74.

## II. Standards of Review

### A. Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept all well-pleaded facts as true, viewing the complaint in the light most favorable to the plaintiff. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

The Supreme Court, however, has declared that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (internal citation omitted). Moreover, "'[f]actual allegations must be enough to raise a right to relief above the speculative level,'" and "[t]he plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Guidry*, 512 F.3d 177, 180 (5th Cir. 2007) (quoting *Bell Atl. Corp.*, 550 U.S. at 570). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted).

In determining whether a complaint states a claim that is plausible on its face, the Court "draw[s] on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, as stated above, to avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570). In order for a claim to be plausible at the pleading stage, the complaint need not

strike the reviewing court as probably meritorious, but it must raise "more than a sheer possibility" that the defendant has violated the law as alleged. *See Id*.

### B. <u>Qualified Immunity</u>

Under the doctrine of qualified immunity, public officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has "mandated a two-step sequence for resolving government officials' qualified immunity claims." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011); *Jacobs v. West Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000). Under these steps, a court must decide (1) "whether the facts that a plaintiff has alleged ... make out a violation of a constitutional right" and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id*. Importantly, the Supreme Court held in *Pearson* that courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. at 236. The Supreme Court also recognized that deciding the two prongs in order "is often beneficial." *Id*.

Thus, the Court must determine whether the plaintiff has alleged a violation of a clearly established constitutional right under the applicable constitutional standards. *Jacobs*, 228 F.3d at 393. In determining whether a right was clearly established at the time of incident alleged, this Court looks to precedent from the Fifth Circuit and the Supreme Court. *McClendon v. Columbia*, 305 F.3d 314, 322 (5th Cir. 2002). Therefore, a right is considered to be clearly established if, based on pre-existing law, the unlawfulness of the conduct in question is apparent. *Id*. In other words, the right is clearly established if its "'contours ... [are] sufficiently clear that a reasonable

official would understand that what he is doing violates that right.'" *Id*. (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (other citations omitted); *accord Foster v. City of Lake Jackson*, 28 F.3d 425, 29 (5th Cir. 1994).

When the plaintiff alleges a constitutional violation so as to satisfy these standards, the Court them must determine whether defendant's conduct was objectively reasonable under existing clearly established law. *Glenn v. Tyler*, 242 F.3d 307, 312 (5th Cir. 2001); *Jacobs*, 228 F.3d at 393. Officials who act reasonably but mistakenly are still entitled to the defense. *Ashcroft v. al-Kidd*, 563 U.S. 731, 743-44 (2011). "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *al-Kidd*, 563 U.S. at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); see also *Creighton*, 483 U.S. at 641. The Court can determine as a matter of law whether a defendant is entitled to qualified immunity and, specifically, whether a defendant's conduct was objectively reasonable. *Goodson v. City of Corpus Christi*, 202 F .3d 730, 736 (5th Cir. 2000); *White v. Balderama*, 153 F.3d 237, 241 (5th Cir. 1998).

When an official pleads qualified immunity, "the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010); *McClendon*, 305 F.3d at 323. In response to a qualified immunity defense, "plaintiffs suing governmental officials in their individual capacities must allege specific conduct giving rise to the constitutional violation." *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999); *see also*, Fed. R. Civ. P. 7(a). The heightened pleading standard applicable in cases defended on qualified immunity grounds requires a plaintiff to plead "with factual detail and particularity, not mere conclusory allegations." *Id.*; *see also Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995). In the § 1983 context, this standard translates in part into the requirement that the

plaintiff "identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Anderson*, 184 F.3d at 443; *DeLeon v. City of Dallas*, 141 F. App'x 258, 261 (5th Cir. 2005).

### III. <u>Analysis</u>

To address Gonzalez's remaining claims against Bickham, Branch and Weary, the Court notes that his rambling complaints (including his 2009 claims which he attempts to reassert) vaguely reference allegations, under the broadest reading, that on November 11, 2009, in connection with a search of his person and/or cell, Captain Seal struck him in the head, knocked him out, and kicked his body. He asserts that CSM Weary and Lt. Peters (who is no longer a defendant) were present at the beating on November 11, 2009, and did nothing to stop it. He arguably asserts that the beating resulted in injuries to his leg, knee, and rib cage and otherwise caused him to suffer blood loss. He further complains that Bickham and Branch had some knowledge of the beatings going on in the jail and took no action to stop them.

#### A. <u>Claims Against Lt. Peters and Assistant Warden Branch</u>

The motion to dismiss was urged in part by defendant Lt. Peters and Assistant Warden Branch. Gonzalez named Peters as a defendant for his alleged failure to intervene in the alleged beating by Captain Seal on November 11, 2009. He named Branch for his alleged general failure to do something about the beatings at the prison. After the filing of this motion, on May 11, 2018, the Court by separate Order dismissed Gonzalez's claims against Peters and Branch under Fed. R. Civ. P. 4(m) because Gonzalez failed to serve either defendant within the applicable 120 day period after filing of the claims against them. For this reason, the motion has been rendered moot as to Peters and Branch and may be dismissed in part for that reason.

**B.     Claims Against EMT Bruce Forbes**

Limited under Fed. R. Civ. P. 12(b)(6) to the scope of the original and supplemental complaints and attachments incorporated therein,[9] Gonzalez alleges that EMT Forbes examined him after the alleged beating on November 11, 2009 by Captain Seal and ignored his pain and suffering.[10] In his response to the motion, Gonzalez indicates that Forbes was "a mannequin" who was manipulated "for the other one."

The standard of conduct for providing medical care to inmates under the Eighth Amendment was clearly established by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97 (1976). In Estelle, the Court held that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Id*. at 104. This is true where the indifference is manifested by prison officials or medical personnel in their response to the prisoner's serious medical needs. It is also true where the indifference is manifested by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id*. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id*.

"Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take

---

[9] Matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may be taken into account under Fed. R. Civ. P. 12(b)(6). *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3rd Cir. 1990). In addition, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F. 3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

[10] *See* Rec. Doc. Nos. 18, 22 and incorporated attachments.

reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). The *Farmer* definition applies to Eighth Amendment medical claims. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994). Thus, for a plaintiff to demonstrate that a prison official has violated his Eighth Amendment right to medical care, he must establish two factors. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities," and second, the "prison official must have a 'sufficiently culpable state of mind,' ... one of "deliberate indifference" to inmate health or safety." *Farmer*, 511 U.S. at 834 (quotation and citations omitted).

Gonzalez alleges only that EMT Forbes ignored his pain and suffering incurred after the alleged beating by Captain Seal on November 11, 2009. Gonzalez does not allege that Forbes denied him necessary medical treatment for any particular serious condition. The allegations set forth by Gonzalez regarding Forbes are rather vague and as noted by the defendants, do not indicate the type of physical injury he suffered for which Forbes should have provided treatment. He also does not actually allege he suffered any specific physical injuries at the time he was examined by Forbes except pain and suffering. Assuming he is referencing the non-specific injuries to his legs and rib cage mentioned above, such injuries do not alone equate to a serious medical condition. *See Raspberry v. Johnson*, 281 F.3d 1279, 2001 WL 1692494, at *1 (5th Cir. 2001) (plaintiff's injured hand and bruises were not serious medical conditions and indifference shown when he was examined by medical personnel and the injuries healed on their own.) The administrative remedy response attached to and considered part of his original complaint indicates that, after the alleged November 2009 incident, he was seen by medical personnel and made no further requests for

medical attention.[11]  Thus, even Gonzalez's broadly construed pleadings fail to indicate a serious medical need.

Applying the two prongs to the claims against Forbes, the Court finds that Gonzalez has not alleged that Forbes intentionally ignored a medical condition that was sufficiently serious or that he was intentionally denied the minimal civilized necessities of life as required by *Farmer*. Gonzalez's disagreement with the medical attention he received, even if that meant that no treatment was deemed necessary, does not rise to a constitutional violation. *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006).

Because of this, Gonzalez has failed to allege that Forbe's violated an established constitutional right and Forbes is entitled to qualified immune.  The defendants' motion should be granted as to this issue and the claims against Forbes dismissed.

### C. Claims Against Deputy Warden Bickham and CSM Weary

Under a broad reading of all of his complaints and the attachments thereto, Gonzalez contends that CMS Weary was present at the November 2009 beating and failed to take action to stop it.[12]  He also contends vaguely that Deputy Warden Bickham may have had general knowledge that beatings that were occurring at the prison and took no action.  Gonzalez does not mention these defendant's by name at any other place in his multiple complaints or attachments.

#### 1. CSM Larry Weary

Gonzalez claims that Weary was present during the alleged November 2009 beating by Captain Seal.  An inmate may state a claim under § 1983 if he can establish that the prison official was present when excessive force was used and failed to take reasonable measures to protect the

---

[11] Rec. Doc. No. 1, p. 16.

[12] Rec. Doc. No. 18.

inmate from the other officer's use of excessive force. *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). "[B]ystander liability arises ... only where the plaintiff can allege and prove 'another officer's use of excessive force.'" *Kitchen v. Dallas County*, 759 F.3d 468, 481 (5th Cir. 2014) (*quoting Hale*, 45 F.3d at 919 (5th Cir. 1995), *abrogated on other grounds*, *Kingsley v. Hendrickson*, __ U.S. __, 135 S. Ct. 2466, 2472-73 (2015)). Thus, a prisoner may establish bystander liability in connection with an Eighth Amendment excessive force claim if he can show that: (1) the prison official knew that a fellow officer was violating the plaintiff's constitutional rights; (2) the prison official had a reasonable opportunity to prevent the harm; and (3) the prison official chose not to act. *Whitley v. Hanna*, 726 F.3d 631, 646-47 (5th Cir. 2013), *cert. denied*, __ U.S. __, 134 S. Ct. 1935 (2014).

In the current posture of this case, as already recognized by the United States Fifth Circuit, "further development of the record is necessary" as it relates to the excessive force claims against Captain Seal.[13] The Supreme Court set out five factors for federal courts to evaluate in an Eighth Amendment excessive force claim: (1) "the extent of injury suffered," (2) "the need for application of force," (3) "the relationship between that need and the amount of force used," (4) "the threat reasonably perceived by the responsible officials," and (5) "any efforts made to temper the severity of a forceful response." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (internal quotation marks omitted). The Court notes that Gonzalez has alleged such a claim against Captain Seal in this lawsuit.

When evaluating a qualified immunity defense in connection with an alleged used of excessive force, or bystander liability therefrom, the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith

---

[13] Rec. Doc. No. 70.

effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 7). The Court has not yet had the opportunity to consider any of these factors with respect to the actions of Captain Seal that could be imputed to the bystander liability of CSM Weary.

The Court also notes that the discussion of the level of seriousness of Gonzalez's alleged injuries in connection with the medical indifference claim against EMT Forbes does not prohibit consideration of the same alleged injuries in evaluating at some point whether they were more than *de minimis* for an excessive force claim. *See Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999) (for excessive force, an inmate must have suffered more than a *de minimis* physical injury but "there is no categorical requirement that the physical injury be significant, serious, or more than minor.") The law is clear that not "every malevolent touch by a prison guard gives rise to a federal cause of action," and *de minimis* uses of physical force can only support an excessive force claim if it was of a sort "'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). However, the ultimate inquiry for an Eighth Amendment excessive force claim (or perhaps a related bystander liability claim) is not the extent of the injury but whether the force was excessive, and "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 38.

Gonzalez alleges that CSM Weary was present at the time of the beating on November 11, 2009, which he claims violated the Eighth Amendment, and made no effort to intervene or stop it. At the time of the incident, it was well established in the law that if excessive force knowingly was being used by Captain Seal and if Weary had a reasonable opportunity to stop it, but chose not to do so, he too would be violating Gonzalez's Eighth Amendment rights. Gonzalez has alleged that

Weary chose not to intervene or prevent the harm caused by Captain Seal. In the context of qualified immunity there is no doubt that the law is established that prison officials are prohibited from unnecessarily beating inmates with a corresponding duty to intervene in the knowing use of that excessive force.

Based on the foregoing, Gonzalez has at least alleged a violation of his Eighth Amendment rights through bystander liability and that Weary acquiesced by his failure to intervene. At this time, Weary has not shown that he is entitled to qualified immunity as a matter of law based on the allegations before the Court. It is not to say that Weary will not be entitled to qualified immunity; instead, in the context of the current motion, Gonzalez has at least alleged a plausible claim against Weary based on his plausible claim that Captain Seal violated his well-established right to be free from the use of excessive force and it was not reasonable for Weary to fail to intervene. The defendants' motion to dismiss should be denied as to this claim.

### 2. Deputy Warden Keith Bickham

Gonzalez alleges that Deputy Warden Bickham knew generally about the beatings at the prison and failed to take preventative action. Under the standards set forth above, to state a claim for bystander liability, Gonzalez would have to allege that Bickham was present during the use of excessive force, had an opportunity to prevent injury, and failed to do so. Gonzalez has not alleged any of these facts against Bickham. He also has not alleged any basis for his conclusory suggestion that Bickham knew about the general beatings or any specific beating.

Nevertheless, it is well settled that bystander liability requires that the officer in question be at the scene of the alleged constitutional violation when it occurred and acquiesced in the use of force. *Whitley*, 726 F.3d at 646; *Snyder v. Trepagnier,* 142 F.3d 791, 801 n.11 (5th Cir. 1998) (citing *Hale*, 45 F.3d at 919); *Gilbert v. French*, 364 F. App'x 76, 83 (5th Cir. 2010); *Ibarra v.*

15

*Harris County, Tex.*, 243 F. App'x 830, 835 & n.8 (5th Cir. 2007) ("A bystander liability claim requires the plaintiffs to show that the officer was present at the scene ...").

The allegations set forth by Gonzalez against Deputy Warden Bickham fail to provide any facts that to state a plausible claim of bystander liability. Gonzalez's failure to plead sufficient facts to establish a constitutional violation renders Bickham qualifiedly immune as a matter of law. The motion should be granted as to this issue and the claims against Bickham dismissed.

## IV. Recommendation

It is therefore **RECOMMENDED** that the defendants' **Motion to Dismiss Based on Qualified Immunity (Rec. Doc. No. 79)** be **GRANTED in part, DENIED in part** and **DISMISSED as MOOT in part** as follows.

It is **RECOMMENDED** that the Motion be **GRANTED in part** to **DISMISS WITH PREJUDICE** Gonzalez's § 1983 medical indifference claim against EMT Forbes and excessive force through bystander liability claim against Deputy Warden Bickham under the doctrine of qualified immunity.

It is further **RECOMMENDED** that the Motion be **DENIED in part** as to the excessive force through bystander liability claims against CSM Weary because plaintiff has alleged a plausible claim against Weary arising from the alleged use of excessive force by Captain Seal on November 11, 2009.

It is further **RECOMMENDED** that the Motion be in part **DISMISSED AS MOOT** as to the § 1983 excessive force through bystander liability claims against Lt. Peters and Assistant Warden Branch because the claims against these defendants were previously dismissed.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation **within fourteen (14) days**

after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[14]

    New Orleans, Louisiana, this _11th___ day of June, 2018.

_____
**KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[14] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.